63 N.J. Super. 56 (1960)
163 A.2d 729
WILLIAM FARMER, PLAINTIFF,
v.
DAVID M. MEEKER, MAYOR, AND COMMITTEEMEN WILLIAM G. BADGLEY, WARREN M. CRAFT, JR., PERCY R. PYNE, III, AND LOYAL H. ROBINSON, CONSTITUTING THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF BERNARDS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; AND VINCENT L. BACK, WILLIAM G. BADGLEY, ARTHUR LANGE, ALBERT R. MAYO, DAVID M. MEEKER, H. MURPHY, JACK R. NIEDNER, H.H. ORTMAN AND J.D. WELCH, CONSTITUTING THE PLANNING BOARD OF THE TOWNSHIP OF BERNARDS, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 15, 1960.
*59 Messrs. Consodine, Callahan & Farley (Mr. George H. Callahan appearing), attorneys for plaintiff.
Mr. Anthony P. Kearns, attorney for defendants.
HALPERN, J.C.C. (temporarily assigned).
This is an action in lieu of prerogative writs challenging the validity of Bernards Township Ordinance No. 77, an amendment to the zoning ordinance, which created a "Residence 20-Parking" zone. The amendment affected only four properties located adjacent to the township's business district in Basking Ridge.
At the request of both counsel, I inspected the area with them in order to better understand the testimony and the many exhibits in evidence.
Bernards Township, encompassing an area of approximately 23.5 square miles in the northern section of Somerset County, is composed almost entirely of residences and farms. The township's zoning ordinance provides for three small business zones, at Lyons, at Liberty Corner, and at Basking Ridge. The one at Basking Ridge is the largest and consists of a strip on both sides of South Finley Avenue (its main thoroughfare) for a distance of two blocks between Lewis and Oak Streets, bisected by Henry Street. Approximately one-half of the land zoned for business is actually used for that purpose, the remainder being occupied by church properties and residences.
South Finley Avenue runs in a generally north-south direction. Ordinance No. 77 deals only with the area on its west side, where the business zone is a strip approximately 280 feet in depth, with most of the South Finley Avenue lots extending the full distance. Henry Street runs west from South Finley Avenue some 500 feet, where it makes a full left turn and becomes Rankin Avenue. In this area, south of Henry Street, a row of residential lots behind the business zone fronts on Rankin Avenue.
North of Henry Street, the rear of the business lots borders directly on a narrow one-way street called Brownlee *60 Place. Brownlee Place meets Henry Street in a "T" intersection at a point approximately midway between South Finley Avenue and Rankin Avenue. The three properties on the west side of Brownlee Place, across the street from the rear of the business zone, were classified residential until rezoned by the challenged amendment to add parking as a permitted use. Further west, behind these Brownlee Place properties, is a tract of approximately 12 acres on which a public school is situated, with access from other streets not pertinent here.
The Somerset Hills National Bank, hereinafter referred to as the bank, is located on the southwest corner of South Finley Avenue and Henry Street, facing South Finley Avenue. The bank, through a wholly-owned subsidiary, the Someridge Corporation, owns a tract shaped like a reversed "L" with approximately 195 feet of frontage on South Finley Avenue and extending back the full distance along the south side of Henry Street to Rankin Avenue. Although this tract is designated as one lot on the township's tax map, it is better described as two lots on South Finley Avenue and one on Rankin Avenue, with Henry Street running along the northerly sides of the Rankin Avenue lot and the most northerly Finley Avenue lot. The building, occupied by the bank and a federal post office, is located on a relatively small portion of the tract, the remainder of which is vacant except for a gravel parking lot adjacent to the building.
The bank, through Someridge, has for several years contemplated erecting stores on vacant portions of the tract, as shown by drawings submitted to the township in various earlier proceedings and now part of the evidence in the instant case. The fact that the bank's Rankin Avenue lot has been in a residential zone has thus far thwarted execution of these plans. Parts of the zoning ordinance require that specified numbers of off-street automobile parking spaces be furnished for any new business buildings, and the only apparent way for the bank to utilize a maximum area of its two business lots for the proposed stores is to employ the *61 adjoining residential lot for parking, a use previously prohibited there. This lot is the fourth property covered by the challenged amendment, so the new "Residence 20-Parking" zone is essentially a strip which extends along the west side of Brownlee Place and then crosses Henry Street to take in the first lot on Rankin Avenue, owned by the bank.
Plaintiff, the owner of a residence on Rankin Avenue some 350 feet from the rezoned tract, has the necessary status to bring this suit. Speakman v. Mayor and Council of North Plainfield, 8 N.J. 250 (1951).
Plaintiff's first ground for attacking the amendment is that it was not validly adopted in compliance with R.S. 40:55-35, as amended by L. 1948, c. 305, which provides in part:
"* * * In case of a protest against such proposed change signed by the owners of twenty per centum (20%) or more * * * of the area of the lots or land included in such proposed change, * * * such change shall not become effective except by the favorable vote of two-thirds of all the members of the governing body * * * of such municipality."
At the public hearing on the amendment two separate petitions were filed with the township committee. The first, which directly opposed the amendment, was signed by owners of residential properties on Rankin Avenue and in other nearby neighborhoods. The second, with which we are primarily concerned, was instituted by a group of store owners on South Finley Avenue and was signed by all three owners of the involved Brownlee Place properties which, the township concedes, total much more than the statutory 20 per cent of the affected area. It will be helpful to quote this petition in full:
"We, the undersigned, for the reasons expressed below respectfully request the members of the Bernards Township Committee to reconsider their actions in proposing Bernards Township Ordinance #77 so that the present properties located on the Westerly side of Brownlee Place, located between the Southerly sideline of West Oak Street and Northerly sideline of West Henry Street, Basking *62 Ridge, New Jersey, shall be rezoned for business use and that such other property as is outlined in the present draft of Ordinance #77 shall be zoned for parking in accordance with the purposes outlined in the present draft of that Ordinance.
The property located on the Westerly side of Brownlee Place between West Oak Street and West Henry Street is directly across from a presently undeveloped business zone in Basking Ridge.
This property is bordered by the Township Hall on the Northerly side, by the Public School on the West, by the bank property on the South and by all business property on the East. With the present location and boundaries of this property, Brownlee Place can never be properly developed. Because of a conflict of purposes we feel that good business locations and desirable residential sites rarely situate themselves on opposite sides of the street.
For the above reasons, we strongly urge the Bernards Township Committee to rezone this area as is set forth above."
The vote of the five-member township committee by which the amendment was declared adopted was three in favor, one opposed, and one abstaining. This is admittedly less than the two-thirds vote required by the statute in the event of a protest. The township argues, however, that the quoted petition does not constitute a "protest" and, therefore, a bare majority vote was sufficient. The township's argument rests upon three aspects of the petition  its phraseology; the fact that, rather than being a negative attack on the proposal, it seeks an alternative positive action; and that it specifically approves the proposal as it relates to one of the four affected properties.
The statute provides no definition or form for a "protest," and no decision has been cited by counsel or found by the court construing this term in the statute.
The word "protest" is defined in Webster's New International Dictionary (2d ed., 1958) as "a protesting or remonstrating; expostulation; complaint; also, an objection or remonstrance." The synonym "objection" is defined as "that which is, or may be, presented in opposition; an adverse reason or argument; a reason for objecting or opposing; also, a feeling of disapproval; * * *."
The fact that the petitioners, out of humility, have couched their plea in respectful terms beseeching the officials to *63 "reconsider" the proposal does not make their petition any less a "protest" than if it had been actually labeled as such. The term must be given a liberal construction to arrive at the intent of the protestants and the purpose of the document. I conclude that, on its face, the petition constitutes a declaration of disapproval of the proposed action of the township committee in rezoning the Brownlee Place properties. It clearly presents adverse reasons or argument and, thus, serves as an "objection" or "protest."
While petitioners seek a different disposition of their properties rather than retention of the status quo, neither the statute nor logic requires that the "protest" be completely negative in nature. In the absence of express assertions to the contrary, the urging of an alternative necessarily implies disapproval of the plan as proposed. Furthermore, in this particular situation, it is clear that the underlying motive of the businessmen and involved property owners was founded on a belief that any change made today might adversely affect the possibilities of another change in the near future that would achieve the result they sought. This is shown by the comments of Richard Booth, one of the involved owners, at the public hearing. He indicated that he was perfectly satisfied with the situation as it existed at the time, although he had anticipated some day asking for a business zone. The proposal, he said, forced his hand. Another of the Brownlee Place owners, Charles A. Kern, also signed the other petition which, as pointed out earlier, was in direct opposition to the amendment. It is apparent that the petitioning owners would prefer retention of the status quo to adoption of the measure they considered inadequate.
The fact that the petition protests only the rezoning of the petitioners' properties is of no benefit to the township. At best, it gave the township an opportunity to alter its plan in part so as to satisfy those property owners and eliminate their objections. When the township declined to do so, its only alternative was to override the protest by a two-thirds vote.
*64 In a final contention against the legality or efficacy of the petition, the township argues that it contained no allegation that the signers were property owners, nor was any proof offered by the petitioners on this subject, hence the petition had no legal effect. Whether the municipality has the obligation of checking the signatures against its tax rolls or the petitioners have the burden of proving their status is academic, because I find that the township had actual knowledge of the status of the three owners whose signatures brought the petition within the provisions of the statute.
Alternatively, the township argues that R.S. 40:55-35, as amended by L. 1948, c. 305, is violative of the Federal and State Constitutions in that its protest provisions (1) improperly delegate legislative power to private citizens; (2) deny equal protection of the law in establishing a privileged class who may, in effect, vote on legislation designed to benefit the community as a whole; and (3) deny the people's right to elect those who act as legislative officers.
These constitutional attacks are founded in a misconception of the nature of the protestants' power. Rather than being legislative, it is merely an exercise of the inherent right of the people to petition their government for redress of grievances, guaranteed them by Art. I, par. 18, of the New Jersey Constitution and the First Amendment to the United States Constitution. Compare Yanow v. Seven Oaks Park, Inc., 11 N.J. 341 (1953).
The statute does not prevent the governing body from amending its ordinance. It merely requires a percentage of vote greater than the usual majority where a proper protest has been filed. That the municipality should exercise extra diligence when it is making important changes in the property rights of citizens who object is obvious, and the Legislature has rightly exercised its discretion in pre-determining the precise degree of extra diligence those citizens will be guaranteed. This is in conformity with *65 recognized legislative powers. Northwood Properties Co. v. Perkins, 325 Mich. 419, 39 N.W.2d 25 (Sup. Ct. 1949); 58 Am. Jur. Zoning, § 177 (1948); 1 Rathkopf, Law of Zoning and Planning, c. 28 (3d ed. 1956); see Wollen v. Fort Lee, 27 N.J. 408 (1958).
I therefore conclude that Ordinance No. 77 was not adopted in compliance with R.S. 40:55-35, as amended by L. 1948, c. 305, and it is hereby adjudged to be null and void and of no force or effect.
Plaintiff has presented additional arguments to set aside Ordinance No. 77, and both sides have offered proofs and briefs with respect thereto. It seems advisable to dispose of these issues even though not necessary for my decision.
Plaintiff contends that Ordinance No. 77 is an improper exercise of the township's zoning power in that it attempts to by-pass the board of adjustment and achieve by ordinance what should be done by variance, and I agree. While the governing body's action in such circumstances has been held invalid on the theory of "spot zoning," I deem it more advisable not to approach the problem from that viewpoint.
To be valid, an amendment to a zoning ordinance must be pursuant to a comprehensive plan and designed for a community purpose. R.S. 40:55-32; Conlon v. Bd. of Public Works, Paterson, 11 N.J. 363 (1953); Cresskill v. Dumont, 15 N.J. 238 (1954); Ward v. Montgomery Tp., 28 N.J. 529 (1959). If the objective of a change is to relieve a particular lot from the general restrictions of its zone for the private benefit of the owner, a variance under R.S. 40:55-39, as amended by L. 1953, c. 288, is the proper procedure, and an attempt to circumvent the board of adjustment and the restrictive standards embodied in the said statute will be prohibited. Conlon v. Bd. of Public Works, Paterson, supra; Cresskill v. Dumont, supra.
As pointed out earlier, the bank has been trying for years to develop its entire tract with new retail stores and parking facilities. In 1951 it sought a variance for the Rankin Avenue lot, which was denied by the township committee *66 despite a favorable recommendation by the board of adjustment. In 1958, apparently at the behest of the bank, a zoning ordinance amendment was proposed which would have placed the bank's Rankin Avenue lot in the business zone, along with one contiguous lot on Rankin Avenue on which there was located a residence. The amendment was approved by the planning board but was never adopted by the township committee. In April 1959 a new master plan was drawn and adopted by the planning board, and it embodied the same recommendation that the business zone be extended to cover the two Rankin Avenue lots, although no specific explanation was given for the proposal. This new master plan made no provision for a "Residence 20-Parking" zone.
The present amendment, although it purports to add parking as a permitted use on the west side of Brownlee Place and the bank's Rankin Avenue lot, is in effect only a rezoning of the latter. The provisions of section 3, paragraph 1(t), of the zoning ordinance regulate the location of off-street parking facilities required for new businesses. That paragraph provides:
"Where 25 or more parking spaces are required or provided, the parking area or areas wherein contained shall be on the same lot as that of the main building or use or on a lot adjoining the same, and, where less than 25 parking spaces are required or provided, the parking area or areas wherein contained shall be within the same block as the main building or use, shall also be within a distance of 200 feet of such main building or use, as measured by a straight line, and shall not be separated from such main building or use by a street as defined in this ordinance, provided, however, that this paragraph shall not apply to a municipal parking lot or one conducted under municipal auspices."
The rezoned Brownlee Place lots are separated from all parts of the business district by a street, so that a business for which the ordinance requires off-street parking facilities could not locate them there. Township officials have made it clear, during the hearings in this case, that they have no *67 plans to build or sponsor any new municipal parking facilities in the area. Although existing merchants might conceivably build such facilities themselves, it is unlikely, for many have adequate parking areas of their own, and they en masse evidenced their disinterest in such a project by joining with the three Brownlee Place owners in petitioning against the amendment. The adjoining school, the only other possible user of parking lots, is located on a tract of more than 12 acres and has fully adequate facilities of its own.
I do not suggest that the municipality must have commitments for development of an area before it rezones it, but the total lack of any potential user makes rezoning of the Brownlee Place lots a futile gesture and is evidence that they were included in the new zone only to becloud the real purpose of the change  to permit the bank to develop its property.
I appreciate that the amendment is cloaked with a presumption of validity and should not be struck down unless it is clearly arbitrary or unreasonable. Ward v. Montgomery Tp., supra. It is true that the mere fact that only a single lot is effectively rezoned by the ordinance is not, in itself, sufficient proof to invalidate it as not being pursuant to a comprehensive plan. Conlon v. Bd. of Public Works, Paterson, supra. But I have found nothing in the evidence, or in my view of the area, to indicate that this lot is so specially situated as to be peculiarly adapted to business or parking use rather than residential. There is not the slightest intimation anywhere that the failure to devote it to residential purposes has been for any reason other than the fact that its ownership, apparently for many years, has been tied with that of the adjacent business tract.
The zoning ordinance was extensively revised in 1954, and the township does not contend, nor does the testimony of its officials show, that the revisors made a mistake, or that changes have occurred in the area since the revision which would warrant reconsideration of the zone boundaries. See Kozesnik v. Montgomery Twp., 24 N.J. 154, 167 *68 (1957), where Chief Justice Weintraub, in discussing the validity of an amendment to a zoning ordinance, said,
"The comprehensive plan embraced by an original zoning ordinance is of course mutable. If events should prove that the plan did not fully or correctly meet or anticipate the needs of the total community, amendments may be made, * * *."
This same principle was stated by the court in Ridgeview Co. v. Florham Park Bd. of Adjustment, 57 N.J. Super. 142, 152 (Law Div. 1959), thusly:
"It is well recognized that zoning ordinances are not immutable, they may be amended from time to time, but there should be some change in circumstances justifying it or some showing that experience has proved that the earlier provision was made in error."
The lack of such circumstances negatives any prima facie presumption that would otherwise exist in favor of the change. See S & L Associates, Inc. v. Washington Twp., 61 N.J. Super. 312 (App. Div. 1960); 1 Rathkopf, Law of Zoning and Planning, c. 27 (3d ed., 1956).
It is my conclusion from the testimony and evidence, and from the content and prior history of Ordinance No. 77, that it was not enacted in furtherance of a comprehensive plan, but was primarily designed to relieve the bank's property of the burden of general zoning regulations for the special reasons that are properly considered only in connection with the granting of a variance.
It is interesting to note that while the distinctions between an amendment and a variance were not discussed, the procedure employed in two recently reported cases wherein the facts were quite similar to those in the instant case was that of variance. See Peoples Trust Co., etc. v. Hasbrouck Heights, etc., 60 N.J. Super. 569 (App. Div. 1959); and Suesserman v. Newark Bd. of Adjustment, 61 N.J. Super. 28 (App. Div. 1960).
Counsel for plaintiff will prepare an appropriate judgment in accordance with these conclusions.