(No. 36552.—

Harold L. Bredberg *et al.*, Appellants, *vs.* The City of Wheaton *et al.*—(Charles Frazier Booth *et al.*, Appellees.)

*Opinion filed May 25, 1962.*

SCHMID and ORSTROM, of Glen Ellyn, (PAUL SCHMID, of counsel,) for appellants and cross-appellees.

CROWELL and LEIBMAN, of Chicago, (GEORGE W. K. SNYDER, and THOMAS H. MORSCH, of counsel,) for appellees and cross-appellants.

Mr. JUSTICE DAILY delivered the opinion of the court:

This direct appeal and cross-appeal, presenting issues relating to the zoning ordinance of the city of Wheaton, come to us from the circuit court of Du Page County upon a certificate of the trial judge that the validity of a municipal ordinance is involved and that the public interest requires the issues to be determined by this court.

The sequence of events leading to the litigation shows that the city of Wheaton adopted a comprehensive zoning ordinance in 1923. One district, designated as a Community Business District, was established on Roosevelt Road in the vicinity of Delles Road and Sunnyside Avenue. Delles Road crosses Roosevelt Road, but Sunnyside Avenue terminates at the north line of Roosevelt Road. The portion of the district located on the north side of Roosevelt, between Delles and Sunnyside, is approximately 385 feet in length and is bisected by the 66-foot right of way of the now defunct Chicago, Aurora and Elgin Railroad Company. The portion of the district on the south side of Roosevelt is situated between Delles Road and the railroad right of way. At present the part of the district lying west of the right of way is improved with two gas stations, one on

either side of Roosevelt, while the part of the district on the east side of the right of way and on the north side of Roosevelt is improved with a one-story building which houses a drug store, paint store and grocery store.

In June, 1957, Charles Frazier Booth and Jean Booth King, individually, and as trustees with Herman H. King, were the owners of a tract of land on the south side of Roosevelt, directly adjacent on the east to the railroad right of way, which had a frontage of 273.5 feet on Roosevelt and a depth of approximately 191 feet. Contiguous to the Booth tract on the south was one owned by John Frazier Snyder which had a width of 273.5 feet and a depth of roughly 77 feet. Both the Booth and Snyder tracts were zoned and situated in a class A residential district. During June, 1957, both owners entered into written argeements to sell their property, subject to the condition subsequent that the premises would be rezoned by the city for commercial purposes.

Subsequently, in September, 1957, these owners filed a petition with the city requesting that their property be rezoned from class A residential classification by including all of the Booth tract and the north 40 feet of the Snyder tract in the Community Business District, heretofore described, and by changing the classification for the balance of the Snyder land to class A commercial. After a public hearing the city's zoning commission recommended to the city council that the ordinance be amended as requested. The favorable recommendation was based upon several considerations, one of which was the proposed use of the property for a building and parking lot to accommodate a supermarket.

It developed that the legal description in the notice of the public hearing was defective and, as a consequence, a new petition was filed in February, 1958. A second hearing was conducted by the commission in March and it again recommended that the petition be granted. This time, how-

ever, its report noted several factors militating against the public health, safety and welfare and expressed the opinion that the requested rezoning was a questionable or borderline case.

Harold L. Bredberg and Ruth N. Bredberg, his wife, were the owners of a tract of land on the south side of Roosevelt Road, also zoned class A residential, which had a frontage of 249.5 feet on Roosevelt and adjoined the Booth tract for its full depth of 191 feet. On April 7, 1957, the Bredbergs filed with the city clerk a written protest against the proposed rezoning in conformity with the appropriate statute and ordinances. However, when the ordinance effecting the proposed rezoning was considered by the five-man city council on April 28, 1958, three members voted in favor of the ordinance and two voted against it.

The next development occurred on May 14, 1958, when the Bredbergs filed a complaint in the circuit court of Du Page County against the city of Wheaton and the owners of the Booth and Snyder tracts. The complaint contained three counts. Count I alleged in substance that although the city council had declared the ordinance passed, it had not in fact passed in view of the protest filed because it did not receive the favorable vote of at least two thirds of the council members as required by section 73—8 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1957, chap. 24, par. 73—8,) and the city code. Continuing, the count alleged that unless the ordinance was declared void the owners of the premises would sell it for commercial purposes, greatly damaging the Bredberg property, and prayed for a declaratory judgment that the amendatory ordinance was void. Count II is not at issue on this appeal. Count III realleged the allegations of count I, alleged irrevocable damage to the Bredberg property, and prayed that the amendatory ordinance be declared unconstitutional and void because it did not in any manner promote the public health, safety, morals or welfare.

All of the defendants, including the city of Wheaton, filed motions for summary judgment, the theory as to count I being that the Bredbergs were not the owners of twenty per cent of the frontage immediately adjoining the land involved, thus making the protest a nullity and requiring only a favorable majority vote of the council to pass the ordinance. The Bredbergs also filed a motion for summary judgment as to count I and, upon consideration of all the motions, the court entered an order ruling that the protest was sufficient and necessitated the affirmative vote of at least four members of the five-man council for the passage of the ordinance. On the same day the court granted leave to the owners of the Booth and Snyder tracts to file a counterclaim against the city of Wheaton, and ordered that the counterclaim should stand as an answer to count III of the Bredberg complaint.

The counterclaim had two counts, the first of which alleged that the failure of the city council to pass the ordinance by a vote of four to one was unreasonable, arbitrary and capricious and prayed the court to order that the Booth and Snyder owners be permitted to use their property as if it had been rezoned. Count II alleged that section 73—8 of the Revised Cities and Villages Act is unconstitutional and void insofar as it requires a two-thirds vote of the council in the event a written protest is filed, and prayed for judgment to that effect. The Bredbergs, having been granted leave to intervene, filed an answer to the counterclaim alleging that the statute was constitutional, and also that the use the Booths and Snyder proposed to make of their property was incompatible with the residential character of the area and would do great damage to the Bredberg property. In its answer to the counterclaim the city of Wheaton denied that the action of its council had been arbitrary and capricious, and denied the invalidity of the statute and ordinance requiring a two-thirds vote.

The cause was tried before the court without a jury and

approximately six weeks after the conclusion of the trial, counterclaimants filed their first amendment to the counterclaim alleging for the first time that the highest and best use of the real estate involved is commercial and that its continued zoning for class A residential use had no relevancy to the public health, safety, welfare or morals.

On November 23, 1959, the trial judge addressed a letter to the attorneys directing counsel for the Bredbergs, or the city, to prepare a decree finding that the action of the city council was not unreasonable or arbitrary, and further directed that the decree should be presented on December 4, 1959. When the latter date arrived, the owners of the Booth tract moved for leave to file a second amendment to the counterclaim. Attached thereto was an amendment of two counts, counts III and IV. It will be recalled that the dimensions of the Booth tract were 273.5 feet by 191 feet, with the first figure being the frontage on Roosevelt Road. Count III alleged that the highest and best use of the tract was commercial, that the residential classification as applied to a part of the lot measuring 203.5 feet by 175 feet was unconstitutional and void, and that the failure of the city council to rezone the smaller portion of the tract was unreasonable. Count IV contained the same allegations except that it alleged the residential classification was unconstitutional as to a part of the tract measuring 150 feet by 150 feet.

Two months later the court entered an order permitting the second amended counterclaim to be filed, whereupon both the Bredbergs and the city filed motions to strike on the ground that the amendments constituted an attempt to have the court act as a zoning authority and to assume legislative functions, and was an attempt to interpose new and improper matters in the cause. Subsequently, on July 8, 1960, the court entered its decree that the issues of law and of fact under counts I and II of the counterclaim, and the issues of law under counts III and IV of the counterclaim, were deter-

mined in favor of the Bredbergs and the city. In short, the court found that the failure of the city council to pass the amendatory ordinance by a vote of four to one was not arbitrary or capricious, that the protest statute was constitutional, and that the residential classification of the Booth tract, even for the lesser dimensions alleged, was valid.

On August 5, 1960, both the Booth interests and Snyder filed a motion to vacate the decree of July 8. The basis of the motion, which was granted, was that the law pertaining to the form and substance of the decree in this cause had been changed by the decisions of this court in *Sinclair Pipe Line Co.* v. *Village of Richton Park,* 19 Ill.2d 370, and *Illinois National Bank & Trust Co.* v. *County of Winnebago,* 19 Ill.2d 487, and that by virtue of such decisions the counterclaimants were now entitled to the relief denied them by the decree. As a practical matter it appears that the counterclaimants contended, and the trial court believed, that our decisions in the cited cases would, under the evidence in the case, permit the court to find the residential classification invalid as to less than the entire tract. In any event, the trial court did just that by a decree entered on December 30, 1960, wherein it found the residential classification invalid as to a portion of the Booth tract measuring 150 feet by 150 feet, and enjoined the city from preventing the use of the lesser tract for any use permitted in a Community Business District. The Bredbergs have appealed from this decree and the owners of the Booth and Snyder tracts have filed a cross-appeal.

At the threshold of our inquiry we are first met by the contention of the cross-appellants that section 73—8 of the Revised Cities and Villages Act is unconstitutional and void, and the alternative claim that the trial court improperly construed the statute. The pertinent provisions of the section are as follows: "In case of a written protest against any proposed amendment of the regulations or districts, signed and acknowledged by the owners of twenty per cent of the

frontage proposed to be altered, or by the owners of twenty per cent of the frontage immediately adjoining or across an alley therefrom, or by the owners of twenty per cent of the frontage directly opposite the frontage proposed to be altered, is filed with the clerk of the municipality, the amendment shall not be passed except by a favorable vote of two-thirds of all of the aldermen or trustees of the municipality." Ill. Rev. Stat. 1957, chap. 24, par. 73—8.

Cross appellants first contend the statute constitutes an unconstitutional attempt on the part of the legislature to delegate legislative powers to private persons. To support this claim they rely upon our decisions which have found "frontage consent" ordinances subject to the same constitutional infirmity. (E.g. *Drovers Trust & Savings Bank* v. *City of Chicago,* 18 Ill.2d 476; *Valkanet* v. *City of Chicago,* 13 Ill.2d 268; *Wolford* v. *City of Chicago,* 9 Ill.2d 613; *People ex rel. Chicago Dryer Co.* v. *City of Chicago,* 413 Ill. 315.) We do not find the analogy well taken. Under frontage consent ordinances the abutting property owners are given unbridled discretion as to what the law shall be, and, once they have made that determination, the corporate authorities become a mere automatic register of their action and the will of the property owners is given the effect of law. (*People ex rel. Chicago Dryer Co.* v. *City of Chicago,* 413 Ill. 315, 323; *Eubank* v. *City of Richmond,* 226 U.S. 137, 57 L. ed. 156.) This is not so in the protest statute under consideration. Discretion as to what the law shall be still rests with the municipal authorities, who are still free to amend or retain their ordinance as they choose. And although the effect of the written protest is to require a greater percentage of the vote of a municipality's governing body, the better reasoned authorities agree that no delegation of the legislative power results. This view, which we adopt, was recently expressed in *Farmer* v. *Meeker,* 1960, 63 N.J. Super. 56, 163 A. 2d 729, at 733, as follows:

"These constitutional attacks are founded in a mis-

conception of the nature of the protestants' power. Rather than being legislative, it is merely an exercise of the inherent right of the people to petition their government for redress of grievances, guaranteed them by Art. I, par. 18, of the New Jersey Constitution and the First 'Amendment to the United States Constitution. Compare *Yanow* v. *Seven Oaks Park, Inc.,* 11 N.J. 341, 94 A. 8d 482, 36 A.L.R.2d 639 (1953).

"The statute does not prevent the governing body from amending its ordinance. It merely requires a percentage of vote greater than the usual majority where a proper protest has been filed. That the municipality should exercise extra diligence when it is making important changes in the property rights of citizens who object is obvious, and the Legislature has rightly exercised its discretion in predetermining the precise degree of extra diligence those citizens will be guaranteed. This is in conformity with recognized legislative powers." See also: *Northwood Properties Co.* v. *Perkins,* 325 Mich. 419, 39 N.W.2d 25; *Fortieth St. & Park Ave., Inc.* v. *Walker,* 133 Misc. Rep. 907, 234 N.Y.S. 708, *Women's Kansas City St. Andrew Society* v. *City of Kansas City,* (W.D. Mo. W.D.) 54 F.2d 1071.

Nor do we find, as cross appellants further contend, that the statute is so vague and uncertain as to violate constitutional guarantees of due process of law. Their argument that it is uncertain as to which property the factor of 20% applies ignores that the statute itself expressly causes it to apply to each of four classes of property sought to be protected, while their claim of uncertainty which rests upon a premise that the word "adjoining" means "near to" or "close" overlooks that in both legal and common usage the term "adjoin" means to lie contiguous with, or to be in contact with. *Lower Indian Creek Drainage Dist.* v. *Vallery,* 343 Ill. 49, 51; *Olmsted* v. *Schrembs,* 30 Ohio App. 430, 165 N.E. 51, 52; *Independent Consolidated School Dist.* v. *Big Stone County,* 243 Minn. 341, 67 N.W.2d 903, 906;

*State ex rel. Boynton* v. *Bunton,* 141 Kans. 103, 40 P.2d 326, 328; Webster's New International Dictionary, 2d ed. p. 33.

The sweep of the cross-appellants alternative contention is that the written protest of the Bredbergs was a nullity, thus permitting the ordinance to be passed on a favorable vote of less than a two-thirds majority of the council, because the Bredbergs were not the owners of twenty per cent of the "frontage" contemplated by the statute. It is agreed that the phrase which controls here is that which relates to the "owners of the twenty per cent of the frontage immediately adjoining" the frontage proposed to be altered. Whereas it is the contention of the Bredbergs that this language has reference solely to twenty per cent of the frontage on land contiguous to the property to be altered, it is the theory of the cross-appellants that the statutory language has reference to the owners of twenty per cent of the frontage for a "reasonable distance" on either side of the frontage to be rezoned.

Apart from the fact the construction urged by cross-appellants would render the statute vague and uncertain, it is our opinion it would produce an absurd and discriminatory result that could not have been intended by the legislature. The statute as a whole shows an intention on the part of the legislature to protect four classes of owners against changes in zoning boundaries: (1) The owners of the frontage proposed to be altered; (2) the owners of frontage immediately adjoining the property proposed to be altered; (3) the owners across an alley from such property; and (4) the owners of the frontage directly opposite the frontage proposed to be altered. To insure uniformity the required percentage in the statute, referring to frontage, is in each instance necessarily intended to apply to the amount of frontage of those protesting whether they be owners adjoining, across an alley, across a street or in the frontage proposed to be altered, in relation to the frontage of the

property sought to be changed. Most certainly, it is the owners of the property adjoining the boundary line of the property proposed to be altered who will be most directly affected by the change. We conclude, therefore, that the Bredbergs protest was sufficient to require a two-thirds vote of the council.

Contention is next made that it was error for the trial court to permit the Bredbergs to intervene as counterdefendants to the counterclaim of the cross-appellants, because they had failed to show that they would suffer special damage differing from that which would be suffered by the general public. (See: *Garner* v. *County of Du Page,* 8 Ill.2d 155.) Whether this contention be appraised in light of the liberal intervention provisions of our Civil Practice Act, (Ill. Rev. Stat. 1957, chap. 110, par. 26.1,) or under principles of zoning law, we believe it is without merit.

Statutes providing for intervention are remedial and are liberally construed. (*Dowsett* v. *City of East Moline,* 8 Ill.2d 560; 67 C.J.S., Parties, sec. 53.) And, as was stated by the Joint Committee who drafted our act: "Intervention is frequently desirable to allow a person to protect an interest jeopardized by pending litigation to which he is not a party or to avoid relitigation in another suit of issues which are being litigated in a pending suit." (Joint Committee Comments, Smith-Hurd Anno. Stat. chap. 110, sec. 26.1, p. 271.) This language has singular application here where the Bredbergs, as owners of immediately adjoining property, were possessed of rights which would be adversely affected by the granting of the counterclaim, and whose interest in the ligitation far exceeded that of the general public or other owners in the area. (Cf. *Michigan Lake Building Corp.* v. *Hamilton,* 340 Ill. 284.) Moreover, we may consider that the city, the only defendant named in the counterclaim, is primarily concerned with the city-wide zoning pattern and cannot be guided solely by a consideration of individual hardships. Under such circumstances the legitimate

objects and purposes of the city could well result in compromises to the detriment of individual rights such as those of the Bredbergs. Indeed, demonstrative in this case is the fact that the city of Wheaton has taken no appeal from the judgment finding its ordinance invalid in its application to a portion of the Booth property.

There remains for our consideration the contention of the Bredbergs (the appellants) that the trial court erred in carving out and rezoning the smaller tract of land, and the opposing contention of the crossappellants (the Booths and Snyder) that the court erred in refusing to rezone their entire premises to the desired commercial classifications. We may say at once that nothing in our decisions in *Sinclair Pipe Line Co.* v. *Village of Richton Park,* 19 Ill.2d 370, and *Illinois National Bank & Trust Co.* v. *County of Winnebago,* 19 Ill.2d 487, was intended to permit a trial court to constitute itself as a zoning authority by carving out and rezoning a portion of the land in litigation. The problem of those cases was the decree induced by evidence which depicted a proposed use in a highly favorable light and the possibility that a decree of general invalidity might thereafter permit the owner to use the property for an entirely different purpose. Aimed at this problem, the thrust of our decisions was clearly stated in the *Sinclair* case (19 Ill.2d at 379) to be: "In our opinion, it is appropriate for the court to avoid these difficulties by framing its decree with reference to the record before it, and particularly with reference to the evidence offered at the trial."

This principle has no application here. All of the evidence at the trial pointed to the use of the property as a supermarket for the Jewel Tea Company, a deal that had fallen through after the original decree for the Bredbergs was entered, and there was a complete lack of any evidence of the proposed use of the 150 feet by 150 feet tract that was rezoned by the decree.

The court was not justified in vacating its original de-

cree on the grounds it did. Where the proper authorities adopt a zoning ordinance pursuant to a legislative grant, a presumption favoring its validity always obtains. (*Bullock v. City of Evanston*, 5 Ill.2d 22; *Galt v. County of Cook*, 405 Ill. 396.) Courts may of course remove restraints on private parties where the zoning classification is arbitrary, unreasonable, capricious or unrelated to the public health, safety, welfare or morals, but where there is room for a legitimate difference of opinion concerning the reasonableness of the classification, or where such question of reasonableness is fairly debatable, the courts will not, and indeed, cannot, interfere with the legislative judgment. *Williams v. Village of Schiller Park*, 9 Ill.2d 596; *First National Bank of Lake Forest v. County of Lake*, 7 Ill.2d 213; *La Salle National Bank v. City of Chicago*, 6 Ill.2d 22.

The proof of both parties is that common to proceedings of this kind, and we see no justifiable purpose in unduly extending this opinion by setting it forth in detail. Suffice it to say that when the zoning of this property is tested for reasonableness by the character of the neighborhood, the zoning classification and use of nearby properties, the extent to which property values will be diminished or increased, and the gain to the public as compared with the hardship imposed upon the individual property owner, (See: *Krom v. City of Elmhurst*, 8 Ill.2d 104, 107,) the most that can be possibly said is that a fairly debatable question is presented. Under the circumstances, the question of the rezoning of any or all of the cross-appellants' premises should be determined by the city council and not by the courts.

Accordingly, and for the reasons stated, the decree of the circuit court of Du Page County entered on December 30, 1960, is reversed, and the cause is remanded with directions to reinstate the decree entered on July 8, 1960.

*Reversed and remanded, with directions.*