355 So.2d 1172 (1977)
Norwood W. HOPE, Robert L. Saunders, and William K. Saunders, D/B/a Hogtown Creek Properties, a Partnership, Petitioners,
v.
CITY OF GAINESVILLE, Respondent.
No. 49506.
Supreme Court of Florida.
November 23, 1977.
Rehearing Denied April 5, 1978.
Harris A. Tobin and William C. Andrews of Andrews & DeLaney, Gainesville, for petitioners.
William L. Durden of Kent, Sears, Durden & Kent, Jacksonville, for respondent.
ADKINS, Justice.
This is an interlocutory appeal from the order of the Circuit Court, Eighth Judicial Circuit in and for Alachua County. Because of the interlocutory nature of the order we consider the appeal as a petition for writ of certiorari. Burnsed v. Seaboard Coastline Railroad Co., 290 So.2d 13 (Fla. 1974). We have jurisdiction. Article V, Section 3(b)(3), Florida Constitution.
Appellants, plaintiffs in the action below, own three contiguous parcels of land within the City of Gainesville, which when purchased were designated "Recreation, Open Space and Buffers" by the Comprehensive Development Plan for Gainesville Urban Area 1970. One parcel was zoned Administrative/Professional, and the remaining two were zoned for residential estate or single family residential purposes. In order to construct an office and banking facility plaintiffs sought to have the two parcels' zoning changed from residential to Administrative/Professional.
They applied to the Plan Board of appellee City of Gainesville (defendant below) for rezoning of the two parcels of land. The Plan Board recommended denial and plaintiffs then went before the City Commission at a public hearing. There, although a majority of the commission voted to grant the request (3-2), the application was denied because more than twenty per cent of the land ownership in the area eligible to vote objected to the petition, and Section 2-46 of the Code of Ordinance requires approval of a four-fifths vote of the commission in such cases.
Plaintiffs filed an action for declaratory relief in the Circuit Court of Alachua County *1173 on the grounds that Section 2-46 of the Gainesville Code was unconstitutional, that the denial of the zoning application was arbitrary and unreasonable and therefore an unlawful taking since the application was consistent with the land-use plan as amended.
Section 2-46 of the Gainesville Code is the implementation of Section 36(1) of the Gainesville Charter, Chapter 15226, Special Acts of Florida, 1931, as amended by Chapter 65-1571 and Chapter 73-473, Laws of Florida, which provides:
"Such prohibitions, regulations, restrictions, and boundaries may from time to time be amended, supplemented, changed, modified or repealed by ordinance amending the same. In case, however, of the protest against such change, signed by the owners of twenty per cent (20%) or more of either the area included in such proposed change or the area within four hundred (400) feet of the area included in the proposed change, such amendment shall not become effective except by the favorable vote of four-fifths (4/5) of all the commission. Publicly owned right-of-way, although included in calculating the distance of four hundred (400) feet referred to in the previous sentence, shall not be included in determining the total of the area lying within four hundred (400) feet of the property involved in such proposed change and the percentages referred to."
The constitutionality of this section is challenged on the grounds that it is arbitrary and unreasonable and not reasonably related to public health, safety, or welfare, that it denies equal protection of the law and due process, and that it delegates the exercise of legislative power to the unbridled discretion of a small segment of the public.
Laws with similar extraordinary majority requirements have been considered by the courts in Florida; however, their constitutionality was never questioned. See Streep v. Sample, 84 So.2d 586 (Fla. 1956); City of Lauderdale v. Des Camps, 111 So.2d 693 (Fla.2d DCA 1959); Banana River Properties v. City of Cocoa Beach, 287 So.2d 377 (Fla.4th DCA 1973); Fox v. Fratello, 308 So.2d 581 (Fla.2d DCA 1975).
Similar statutes exist in many states, McQuillan, Municipal Corporations (3d ed.) §§ 25.244, 25.248; 101 C.J.S. Zoning §§ 114, 122, and have been held valid in several jurisdictions as not being in derogation of the rule against delegating legislative authority. These decisions are based generally on the theory that people have an inherent right to petition their government for redress of grievances. Farmer v. Meeker, 63 N.J. Super. 56, 163 A.2d 729 (1960); Koppel v. City of Fairway, 189 Kan. 710, 371 P.2d 113 (1962); Trumper v. City of Quincy, 264 N.E.2d 689 (Mass. 1970). In Bredberg v. City of Wheaton, 24 Ill.2d 612, 182 N.E.2d 742 (1962), the Supreme Court of Illinois considered a municipal zoning ordinance similar to the one here in question and made the following comment:
"Discretion as to what the law shall be still rests with the municipal authorities, who are still free to amend or retain their ordinance as they choose. And although the effect of the written protest is to require a greater percentage of the vote of a municipality's governing body, the better reasoned authorities agree that no delegation of the legislative power results." At 746.
The written protests of that percentage of owners necessary to require the extraordinary requirement is not conclusive, but rather is a prerequisite to what could in essence be called a closer scrutiny by the City Commission, and their vote, of course, can override the protest, thus leaving the ultimate authority to amend the zoning ordinance with the elected officials. Annot. 21 A.L.R.2d 556 (1929).
The argument is advanced that regardless of protest all property owners seeking a zoning amendment are similarly situated, and to require an extraordinarily high majority to pass one amendment and not the other is unconstitutional. We do not accept this reasoning. The fact that the surrounding owners did protest in writing the proposed change in zoning is the most significant *1174 aspect of this action. At the very least, the City of Gainesville owes a duty to all landowners who could foreseeably be adversely affected by the proposed zoning change and to give as much consideration to their rights as to those who would perhaps benefit from the change.
It is clear that the purpose of a provision requiring a greater than ordinary vote for a change of the zoning classification upon the filing of protests is to confer a measure of added protection against unwanted or ill-considered change upon those property owners who would be most affected by it. Farmer v. Meeker, supra. Here we have a situation where the surrounding landowners are primarily residential owners and are protesting the zone change which would allow an office and banking facility. This would change the complexion of their area substantially, and, as evidenced by their written protests, in a manner unacceptable to them.
The written protest to a zoning amendment creates a posture for the one property owner which is dissimilar to that of the owner where no protest is made, and it alone is the protesting neighboring landowners' means in the local governmental process to make their grievance known and the opportunity to stop what could substantially and adversely affect their property. Thus, this different posture before the City Commission created by a written protest would negate a constitutional attack on equal protection grounds.
This is closely related to the allegation that by allowing this written protest by a minimum of twenty per cent of the landowners within 400 feet that the owner seeking the amendment is subject to what could be totally capricious protests which could thwart the amendment. This argument we do not accept. The passage of an amendment is not dependent upon the unbridled discretion of a single individual or limited group of individuals who may protest in writing, and additionally the protests do not determine the issue but merely place those protesting in a position to have the City Commission consider and act upon their protests. The City Commission is the ultimate authority to amend the ordinance, and as the elected officials of the City they consider the protests before voting. If they by their vote do not reach the four-fifths or four-to-one vote required where a sufficient protest has been made, this is prima facie evidence that the protests were not capricious.
Section 2-46 would appear to be not only a valid ordinance, but one which is desirable. Both the public interests and private interests are considered with the resultant effect that the public interests are paramount but not in derogation of the private interests where a valid protest is made.
Section 36(1) of the Gainesville Charter is constitutional and the trial judge was correct in his ruling.
The writ of certiorari is discharged and the cause is remanded to the trial court.
It is so ordered.
OVERTON, C.J., and BOYD, ENGLAND, SUNDBERG, HATCHETT and KARL, JJ., concur.