

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

August 27, 1996

The Honorable Harvey Hilderbran
Chair
Committee on Human Services
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-410

Re: Whether the supermajority require-
ment in Local Government Code section
212.015(c) is unconstitutional and related
questions (RQ-844)

Dear Representative Hilderbran:

You ask about the constitutionality of Local Government Code section 212.015, a zoning statute which governs replatting of a subdivision or part of a subdivision in certain circumstances. It provides as follows:

> (a) In addition to compliance with Section 212.014,[1] a replat without vacation of the preceding plat must conform to the requirements of this section if:
>
> > (1) during the preceding five years, any of the area to be replatted was limited by an interim or permanent zoning class-ification to residential use for not more than two residential units per lot; or
>
> > (2) any lot in the preceding plat was limited by deed restrictions to residential use for not more than two residential units per lot.

---

[1]Local Government Code section 212.014 provides as follows:

> A replat of a subdivision or part of a subdivision may be recorded and is controlling over the preceding plat without vacation of that plat if the replat:
>
> > (1) is signed and acknowledged by only the owners of the property being replatted;
>
> > (2) is approved, after a public hearing on the matter at which parties in interest and citizens have an opportunity to be heard, by the municipal authority responsible for approving plats; and
>
> > (3) does not attempt to amend or remove any covenants or restrictions.

(b) Notice of the hearing required under Section 212.014 shall be given before the 15th day before the date of the hearing by:

(1) publication in an official newspaper or a newspaper of general circulation in the county in which the municipality is located; and

(2) by written notice, with a copy of Subsection (c) attached, forwarded by the municipal authority responsible for approving plats to the owners of lots that are in the original subdivision and that are within 200 feet of the lots to be replatted, as indicated on the most recently approved municipal tax roll or in the case of a subdivision within the extraterritorial jurisdiction, the most recently approved county tax roll of the property upon which the replat is requested. The written notice may be delivered by depositing the notice, properly addressed with postage prepaid, in a post office or postal depository within the boundaries of the municipality.

(c) *If the proposed replat requires a variance and is protested in accordance with this subsection, the proposed replat must receive, in order to be approved, the affirmative vote of at least three-fourths of the members present of the municipal planning commission or governing body, or both.*[2] For a legal protest, written instruments signed by the owners of at least 20 percent of the area of the lots or land immediately adjoining the area covered by the proposed replat and extending 200 feet from that area, but within the original subdivision, must be filed with the municipal planning commission or governing body, or both, prior to the close of the public hearing.

(d) In computing the percentage of land area under Subsection (c), the area of streets and alleys shall be included.

(e) Compliance with Subsections (c) and (d) is not required for approval of a replat of part of a preceding plat if the area to be replatted was designated or reserved for other than single or duplex family residential use by notation on the last legally recorded plat or in the legally recorded restrictions applicable to the plat.

---

[2]The municipal authority responsible for approving plats and replats is the municipal planning commission or, if the municipality has no planning commission, the governing body of the municipality. The governing body by ordinance may require the approval of the governing body in addition to that of the planning commission. Local Gov't Code § 212.006.

Local Gov't Code § 212.015 (footnotes added) (emphasis added). In particular, you ask about the constitutionality of the requirement in subsection (c) that a proposed replat requiring a variance that is protested by adjoining landowners must be approved by the affirmative vote of at least three-fourths of the members present of the municipal planning commission or governing body.

Your letter suggests that section 212.015(c) constitutes a taking because "[t]he hurdle that a landowner must overcome in a case where neighbors protest — the three-fourths planning commission vote approval requirement — is a high one" that precludes many landowners from developing their property. It also suggests that there is no legitimate purpose for the three-fourths approval requirement, and that the requirement is arbitrary and not reasonably related to the health, safety, or welfare of the citizens of Texas. We disagree.

First, while the three-fourths approval requirement may make it more difficult for a landowner to obtain a replat, it does not foreclose the possibility of a replat. Furthermore, provisions requiring a supermajority in the event of adjoining landowners' protest to zoning changes are a common feature of state zoning laws[3] and courts have concluded that such provisions are constitutional. Specifically, courts have held that these provisions do not impermissibly delegate legislative authority[4] and that they serve a legitimate purpose — protection of the interests of adjoining landowners. In response to the contention that a statute with a similar supermajority requirement violated the constitution

---

[3]*See generally* ROBERT M. ANDERSON, AMERICAN LAW OF ZONING § 4.34 (3d ed. 1986); 8A EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS, §§ 25.244, .245, .248 (3d ed. 1986); 101 C.J.S. *Zoning* §§ 114, 122 (1958).

[4]The statutory predecessor to section 212.015 provided that if twenty percent of adjoining landowners protested a proposed replat then written approval of sixty-six and two-thirds percent of such landowners was required for approval. Act of April 13, 1981, 67th Leg., R.S., ch. 67, § 1(c)(2), 1981 Tex. Gen. Laws 149, 150. A state appellate court concluded that this provision constituted an unconstitutional delegation of legislative power to a narrow segment of the community. *Minton v. Fort Worth Planning Comm'n*, 786 S.W.2d 563, 565 (Tex. App.—Fort Worth 1990, no writ). Unlike the scheme at issue in *Minton*, the current statute, which has been codified and amended, does not give neighbors a veto over a replat. Rather, the statute now provides that a protest requires that the replat be approved by a supermajority of the planning commission or governing body. Courts have repeatedly held that such "protest" statutes do not impermissibly delegate legislative power. *See, e.g., Hope v. City of Gainesville*, 355 So.2d 1172, 1173 (Fla. 1977); *Trumper v. City of Quincy*, 264 N.E.2d 689, 690 (Mass. 1970); *Bredberg v. City of Wheaton*, 182 N.E.2d 742, 746 (Ill. 1962); *Koppel v. City of Fairway*, 371 P.2d 113, 115-16 (Kan. 1962); *Northwood Properties Co. v. Perkins*, 39 N.W.2d 25, 27 (Mich. 1949); *Farmer v. Meeker*, 163 A.2d 729, 733 (N.J. Sup. Ct. 1960); *see also Prince George's County v. McBride*, 302 A.2d 620, 623-24 (Md. 1973).

by improperly delegating legislative authority, denying equal protection of the laws, and infringing upon the people's right to elect legislators, one oft-quoted[5] court stated,

> These constitutional attacks are founded in a misconception of the nature of the protestants' power. Rather than being legislative, it is merely an exercise of the inherent right of the people to petition their government . . . .
>
> The statute does not prevent the governing body from amending its ordinance. It merely requires a percentage of vote greater than the usual majority where a proper protest has been filed. That the municipality should exercise extra diligence when it is making important changes in the property rights of citizens who object is obvious, and the Legislature has rightly exercised its discretion in predetermining the precise degree of extra diligence those citizens will be guaranteed. This is in conformity with recognized legislative powers.

*Farmer v. Meeker*, 163 A.2d 729, 733 (N.J. Sup. Ct. 1960) (citations omitted). Relying on this and other holdings, the Supreme Court of Florida specifically rejected the contention that a supermajority statute was arbitrary and unreasonable and not reasonably related to public health, safety, or welfare. *See Hope v. City of Gainesville*, 355 So.2d 1172, 1174 (Fla. 1977) ("It is clear that the purpose of a provision requiring a greater than ordinary vote for a change of the zoning classification upon the filing of protests is to confer a measure of added protection against unwanted or ill-considered change upon those property owners who would be most affected by it.") (citing *Farmer v. Meeker*, 163 A.2d 729).[6]

For the reasons stated in these cases, we conclude that the section 212.015(c) supermajority requirement is not unconstitutional on its face. Of course, a particular planning commission decision disapproving a replat pursuant to section 212.015(c) may constitute a taking. The determination whether a particular planning commission decision disapproving a replat constitutes a taking involves questions of fact and is therefore beyond the purview of an attorney general opinion.

You ask whether section 212.015(c) lacks sufficient standards to guide the planning commission in voting on a proposed replat. Your letter suggests that planning commission members might decide to deny a proposed replat for personal or political

---

[5]*See, e.g., Trumper v. City of Quincy*, 264 N.E.2d at 690; *Bredberg v. City of Wheaton*, 182 N.E.2d at 746.

[6]*See also Hope v. City of Gainesville*, 355 So.2d 1173-74; *Trumper v. Quincy*, 264 N.E.2d at 690-91; *Farmer v. Meeker*, 163 A.2d at 733 (supermajority provisions held not to violate Equal Protection guarantee).

reasons. We do not believe that this possibility makes the section 212.015(c) supermajority requirement unconstitutional on its face. First, this possibility is not unique to protested replat proposals, and could arise in the context of a platting or unprotested replatting decision. Second, chapter 212 is not devoid of standards. Local Government Code section 212.010 sets forth standards for approving plats. These standards apply equally to approvals of proposed replats. See Local Gov't Code § 212.001(2) ("'Plat' includes a replat."). Of course, a particular decision to deny a protested replat proposal may be unreasonable or arbitrary, but the determination whether a particular decision is unreasonable or arbitrary involves questions of fact and is therefore beyond the purview of an attorney general opinion.[7]

In response to your query whether a planning commission should be required to provide a written final determination outlining the specific reasons for the denial of a protested replat application, we note that section 212.009(e), see infra note 8, requires the municipal authority responsible for approving plats to certify the reasons for an action taken on an application on the request of the owner. A landowner who neglects to make such a request waives any claim that he was denied procedural due process because the decision-making body failed to disclose the information it considered in making its decision. Woodson Lumber Co. v. City of College Station, 752 S.W.2d 744, 748 (Tex. App.--Houston [1st Dist.] 1988, no writ).

Finally, you also ask whether procedures adopted by certain municipalities conflict with the timelines for platting set forth in section 212.009 of the Local Government Code.[8] Your letter states that "[g]overning bodies are skirting this requirement by

---

[7]The fact that planning commission or city council members are swayed by popular opinion in denying a proposed zoning change does not necessarily state a claim of denial of substantive due process. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1579 (11th Cir. 1989) (citing cases).

[8]Section 212.009 provides in pertinent part:

(a) The municipal authority responsible for approving plats shall act on a plat within 30 days after the date the plat is filed. A plat is considered approved by the municipal authority unless it is disapproved within that period.

(b) If an ordinance requires that a plat be approved by the governing body of the municipality in addition to the planning commission, the governing body shall act on the plat within 30 days after the date the plat is approved by the planning commission or is considered approved by the inaction of the commission. A plat is considered approved by the governing body unless it is disapproved within that period.

(c) If a plat is approved, the municipal authority giving the approval shall endorse the plat with a certificate indicating the approval . . .

(d) If the municipal authority responsible for approving plats fails to act on a plat within the prescribed period, the authority on request shall issue a certificate stating the date the plat was filed and that the authority failed to act on

<u>refusing to allow property owners to file the replat</u>. Their internal processes only permit landowners to <u>apply to file</u> by only allowing the use of a 'preliminary' plat, while not allowing the applicant to file a 'final' plat." (Emphasis in original.) We agree that the timelines set forth in section 212.009 apply to proposed replats. *See* Local Gov't Code § 212.001(2) ("'Plat' includes a replat.").[9] The determination whether any specific municipal procedures conflict with section 212.009 would require the resolution of factual questions, as would the determination whether a particular municipality's practices have caused a delay in acting upon a proposed replat that amounts to a taking. Neither issue can be definitively resolved in an attorney general opinion.[10]

---

(footnote continued)

the plat within the period. The certificate is effective in place of the endorsement required by Subsection (c).

(e) The municipal authority responsible for approving plats shall maintain a record of each application made to the authority and the authority's action taken on it. On request of an owner of an affected tract, the authority shall certify the reasons for the action taken on an application.

[9]In addition, Local Government Code section 212.0065, which authorizes a municipality to delegate the approval of certain plats to an employee, requires the employee to refer any plat he or she refuses to approve to the appropriate body within the time period specified by section 212.009. Municipal procedures that effectively permit employees to deny replats could run afoul of this provision as well. Furthermore, such municipal procedures may also constitute an unauthorized delegation of legislative power to staff.

[10]Given our conclusion that section 212.015(c) is not unconstitutional on its face, we do not address your final question: "If you determine the statute 'unconstitutional,' would it be appropriate for all previously denied, suspended, or forcibly withdrawn replatting applications paid for since 1981 be automatically approved . . . ?"

## S U M M A R Y

The supermajority requirement in Local Government Code section 212.015(c) is not unconstitutional on its face.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General