84 So.2d 586 (1956)
F.D. STREEP and Gwendolyn J. Hale, Appellants,
v.
Wallace SAMPLE, as Mayor Commissioner of the City of Fort Pierce, a Municipal Corporation, Volusia Locations, Inc., a Florida Corporation, et al., Appellees.
Supreme Court of Florida. Division B.
January 11, 1956.
Rehearing Denied February 2, 1956.
Raymond E. Ford and Denison & Lewis, Fort Pierce, for appellants.
Fee, Parker & Sample and Willes & Bittan, Fort Pierce, for appellees.
THOMAS, Justice.
The appellants filed a bill by which they attempted to secure an injunction to prevent the City of Fort Pierce from issuing a permit to the appellee, Volusia Locations, Inc., for the construction of a business building on property at one time restricted to residential use and later by ordinance declared usable as a site for a commercial building. The litigation ended in a decree dismissing the cause and this appeal followed.
*587 Three questions are presented for our study, discussion and decision. To determine the first of these requires an examination of Section 176.06, Florida Statutes 1953, and F.S.A., and Section 9(n) of Chapter 3 of Chapter 24528, Laws of Florida, Acts of 1947, the city charter. Under the latter law a majority of the five members of the city commission constitute a quorum for the transaction of business and a vote of three members is "necessary to adopt any ordinance or resolution * * *." The former section appears in Chapter 176, titled "Municipal Zoning." By its provision boundaries and restrictions may be changed but if a protest against change is presented in writing "by the owners of twenty per cent or more either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear thereof extending five hundred feet therefrom, or of those directly opposite thereto extending five hundred feet from the street frontage of such opposite lots" a proposed revision cannot become effectual except by an affirmative vote of "three-fourths of the governing body" of the city, Section 176.06, supra.
As a premise for the first question, the appellants state that the requisite number of protestants resisted the re-zoning and that the limitation of Section 176.06, supra, became applicable, that is, the favorable vote of four commissioners was indispensable to a change in the zoning. It appears from the record that three commissioners voted for the amendment of the zoning ordinance on first and second readings. So, conclude the appellants, the amendatory ordinance failed to pass by the majority required in Section 176.06, supra, because three-fourths of all the commissioners of the city did not vote aye.
Notice was given pursuant to Section 176.05, Florida Statutes 1953, and F.S.A., that a meeting would be held 30 August 1954, to consider an application for re-zoning. The commission met on that date but the matter mentioned in the notice was not settled. The commission met again 10 September 1954. On the latter day the appellants filed the written protest which the clerk of the circuit court later certified was signed by persons owning "more than 20% of the lots immediately adjacent in the rear" of the property sought to be re-zoned "and extending 500 feet therefrom" and was signed by "owners of 20% of the lots directly opposite" the property attempted to be re-zoned.
The appellees argue that the owners of twenty per cent of the property in any one area did not protest and that such protest as was presented was not timely. We cannot accept either position. The allegation of the bill with reference to the sufficiency of the petition was denied in the answer. This placed on the appellants the burden of proving that twenty per cent of the owners in one of the areas signed the protest. The certificate of the clerk seems to have established the sufficiency of the petition and the testimony does not impeach the certificate.
We think the filing of the petition was timely. In the minutes of the meeting of August thirtieth appears the following significant language: "Mayor-Commissioner pro-tem Harden stated that the decision of the Commission in this matter will be withheld pending further study." At this point protests were made which were not in such form as to bring into play Section 176.06, supra, but obviously the question of changing the zoning ordinance was kept in abeyance and we think all phases of it were in the same status. It would not be logical to hold that time for protest had terminated but time for action against which objection was directed had not.
At the meeting held 10 September the mayor-commissioner pro-tem., who was presiding, announced "that the purpose of the meeting was for the disposition of the request of Volusia Locations, Inc. for a zoning change * * *." The attorney for the protestants was then given permission to file "new material" with reference to the opposition to the amendment of the zoning ordinance. A motion was made and carried that the application of Volusia Locations, Inc., be granted and that the city attorney be instructed to prepare an ordinance "rezoning *588 the property as advertised." This was the first time the city passed upon the application. Then the commissioners voted their approval, the petition of the protestants was before them and, of course, it was before them when the amendatory ordinance, which would effectuate the commission's approval of Volusia Locations' application, was passed on first reading three days later, 13 September 1954.
We find nothing in the law that would render the petition worthless unless filed on 30 August, the day named in the notice. The statute simply provides that in the event of a protest in the manner prescribed, a certain vote is a prerequisite to effectiveness of the amendment of a zoning ordinance. The records of the commissioner's meetings demonstrate that the matter was a continuing one and was not concluded until the final passage of the ordinance 27 September 1954. We understand that the ordinance was intended to become effective 28 September 1954.
We gather that it is the attitude of appellees as well as appellants that if the protest was timely and contained the names of twenty per cent of the owners of property in one of the three areas, Section 176.06, supra, is applicable.
We decide in appellants' favor in respect to these two elements and now go to the question whether the language "three-fourths of the governing body," Section 176.06, supra, means three-fourths of all commissioners or three-fourths of a quorum. As we have written, three commissioners voted for the ordinance at both readings. Four commissioners were present at each meeting. At one meeting one commissioner voted "no" and at the other meeting one commissioner abstained from casting his vote.
The appellants maintain the position that the three-fourths vote required should be computed as three-fourths of five, the whole number of city commissioners, so that four affirmative votes would be necessary to enact the ordinance; the appellees insist, with equal vigor, that the vote should be computed on the basis of the number of commissioners present, so that but three affirmative votes would be needed.
A comparison of the two laws aligns us with the appellants. We think there is a distinction between them and a real purpose for the distinction. Under one, Section 9(n) of the charter, a majority of all members, three or more, shall constitute a quorum, but three votes are necessary to adopt an ordinance. If this section governed, then, the re-zoning ordinance was properly passed. But the provisions are not synonymous with the corresponding provisions in Section 176.06, supra. Under the former provision ordinances without end can be passed, regardless of protests and objections of citizens, so long as three commissioners approve, whether three, four or five are present.
Doubtless the legislature thought that the amendment of a zoning ordinance in the face of proper protest was a matter of greater moment than that affected by the usual ordinance. The difference created by the protest at once becomes a distinction. Moreover Section 176.01, Florida Statutes 1953, and F.S.A., considered with 176.06, supra, confirms the view that we should not accept appellees' argument that in such a situation four votes would be required only if five members were present and three votes would suffice if four were present.
To get the true formula for computing three-fourths of the "governing body" we now consult Section 176.01, supra, and learn that the legislature defined "governing body" as "the city or town commission, council, board of aldermen, or other governing bodies of any form whatsoever by whatsoever name known." We cannot construe these statutes to read that we should multiply the number of commissioners present by three-fourths and accept the product so long as it is not less than three. We think the number five is the multiplicand.
Because of the views we have expressed we do not feel obliged to decide the question challenging the adequacy of the notice *589 on the ground that the description it contained was erroneous.
Reversed.
DREW, C.J., and ROBERTS and O'CONNELL, JJ., concur.