111 So.2d 693 (1959)
CITY OF FORT LAUDERDALE, a municipal corporation, Appellant,
v.
Julius R. DES CAMPS, Appellee.
No. 689.
District Court of Appeal of Florida. Second District.
May 1, 1959.
Rehearing Denied May 22, 1959.
Julian E. Ross and Donald H. Norman, Fort Lauderdale, for appellant.
*694 Robert W. Crawford, Fort Lauderdale, for appellee.
KANNER, Chief Judge.
The appellant City of Fort Lauderdale, defendant in the trial court, was adjudged by the chancellor in his final decree to have been in error in the enactment of zoning ordinance C-1377 by its city commission. The ordinance was passed on three separate readings by a three to two vote of that body.
The chancellor held that to pass such ordinance, the city commission should have approved it by the affirmative vote of four of the five commissioners. The appeal is predicated upon the city's contention that, under the facts as applied to its charter, chapter 57-1322, Laws of Florida, Special Acts of 1957, passage of the ordinance required only a three to two vote of the commission, or a simple majority vote.
The applicable provision of chapter 57-1322, section 323, contains this language:
"The City Commission may by ordinance from time to time amend, supplement, change, modify or repeal any existing zoning regulation or restriction, after twelve (12) days' notice has been given by publication in the official paper, or a paper of general circulation in the municipality, notifying the public of the proposed changes and fixing the time of a public hearing before the Commission, at which hearing parties in interest and citizens shall have an opportunity to be heard. In case written protest against such change is filed in writing prior to such hearing signed by owners of fifty per cent (50%) or more of area of lots included in such proposed change, or by owners of fifty per cent (50%) or more of area of lots immediately adjacent in the rear or directly opposite thereto and within 300 feet therefrom, such amendment shall not become effective unless adopted by the concurring vote of four City Commissioners at three separate regular meetings of the City Commission."[1]
It is seen, then, that the greater vote of the city commission is required for passage of the ordinance if, from any one of the three specified categories as enumerated below, there is a 50 per cent or more protest from the owners of the area of lots:
1. included in such proposed change, or
2. immediately adjacent in the rear or
3. directly opposite thereto and within 300 feet therefrom.
The area sought to be rezoned from its R-3, residential, status to M-1, industrial, is a one hundred acre tract in the southwestern portion of the city, not subdivided into lots and blocks. The city elected, for purposes of rezoning, to designate the south side of the subject property as the rear. To this there was no objection, and the case proceeded on that premise. The area adjacent in the rear or to the south side of the lands sought to be rezoned is unimproved and not subdivided into lots and blocks.
There were no protests from the area sought to be rezoned nor from the area immediately adjacent in the rear of such property. Before the ordinance was considered by the commission on first reading, protests were made by approximately 92.2 per cent of owners of the area of property north of the lands in question, approximately 59.8 per cent on the west, and 2.6 per cent on the east. The total approximate protest for these three sides was 49.7 per cent. The question then arose and was argued in the trial court as to just which of these protestants were, under "directly opposite thereto," eligible to protest.
In answer to this question appellee's interpretation of the charter provision quoted above is that "thereto" refers to the word "rear", that since the south side of the property is the rear, then "directly opposite *695 thereto" would mean the property directly opposite the rear of the area sought to be rezoned, or only that property to the north. In support of this, it is contended that the words, "directly opposite thereto," by the language of the enabling charter provision and under the accepted standard dictionary definitions of the words, could not refer to the east, west, and north sides combined, but could only mean in one direction, this one direction being only to the north. This view, in essence, was contained within and supported by the opinion written by the trial court. Based upon his interpretation that the protesting percentage, under "directly opposite thereto," would come only from the north side of the area in question, the court thus found that the names of more than fifty per cent had filed their written protest against the zoning change, this being the 92.2 per cent of the owners of the area of lots to the north. Under this construction, then, the 59.8 per cent to the west and the 2.6 per cent to the east were excluded as being ineligible to protest under the charter provision.
Appellant's position is that the right of protest is not intended under the third protest category contained in the charter provision to be restricted to owners of the area of lots directly opposite in just one direction, but that these words logically signify the owners of the combined area of lots opposite the property sought to be rezoned to the north, east, and west, totaling a protest of 49.7 per cent.
The question which this court is called upon to answer is whether "directly opposite thereto" as contained in the charter provision means opposite the rear of this property sought to be rezoned, or the lots to the north of such property; or if, instead, it means the area of lots opposite the north, east, and west sides of the tract designated under the zoning change. The answer to this question must rest upon the logical and reasonable construction of the context of the charter provision in the light of the legislative intent.
The court, in construing a statute, must regard legislative intent as the guiding factor, and this intent must be given effect even if it appears to be contradictory to the strict wording of the statute and to the rules of construction. The literal interpretation should not be accorded if it leads to an unreasonable conclusion or to a result not intended by the lawmakers. State v. Sullivan, 1928, 95 Fla. 191, 116 So. 255. Moreover, a statute which is reasonably susceptible of two interpretations, one of which would render it clearly constitutional and one of which would leave its constitutionality in doubt, should be construed so as to avoid unconstitutionality. In re Seven Barrels of Wine, 1920, 79 Fla. 1, 83 So. 627; Langford v. Odom, 1919, 77 Fla. 282, 81 So. 469; and City of St. Petersburg v. Siebold, Fla. 1950, 48 So.2d 291.
The Fort Lauderdale charter provision was obviously patterned after section 176.06, Florida Statutes, F.S.A. There appears to be no Florida case which deals with the construction of this section 176.06 with respect to the question here concerned. However, in the case of Streep v. Sample, 1956, 84 So.2d 586, 587, involving interpretation of section 176.06 in connection with certain portions of the City of Fort Pierce charter as to the number of votes required in the enactment of a zoning change, there is contained a statement with reference to an evidentiary phase of that case. The statement reads:
"Notice was given pursuant to Section 176.05, Florida Statutes 1953, and F.S.A., that a meeting would be held 30 August 1954, to consider an application for rezoning. The commission met on that date but the matter mentioned in the notice was not settled. The commission met again 10 September 1954. On the latter day the appellants filed the written protest which the clerk of the circuit court later certified was signed by persons owning `more than 20% of the lots immediately adjacent *696 in the rear' of the property sought to be re-zoned `and extending 500 feet therefrom' and was signed by `owners of 20% of the lots directly opposite' the property attempted to be rezoned."

Although, as heretofore stated, the question here was not presented for determination in the Streep case, yet it appears that the parties to the suit proceeded on the premise that "directly opposite" related to the property attempted to be rezoned.
To construe the words, "directly opposite thereto and within 300 feet therefrom", as referring to the rear of the lands sought to be rezoned would give a strained effect to section 323, since the locus of the zoning change is the property sought to be rezoned and not any property located to the rear of it.
We may here comment that the affected property owners as designated in the charter provision are not given the power of defeating or vetoing the proposed ordinance, no matter how vigorously they may oppose it. The charter provision gives them only the opportunity to be heard; and if their protest reaches the required standard from any one of the specified areas, then the greater vote of the city commission is required in order to effectuate the proposed ordinance; if not, then the ordinance may pass by a simple majority vote of the commission.
Since there are three specified categories of eligible protesters under the pertinent provision of section 323, we think each owner of property within and surrounding the area in question must fall into one of these designations. Thus the third specified protest classification must include the area of lots to the north, east, and west sides of the property sought to be rezoned, since all would be affected by the change in use classification of this one hundred acre tract. The property adjacent in the rear, or to the south, is taken care of in this instance under a separate protest category as a distinctly specified area, as is the property included in the zoning change. To interpret the zoning provision as did the trial court would be to cast doubt upon its validity, since property owners to the east and west of the tract sought to be rezoned would thereunder be denied the right of protest granted those on the north side and would thus be discriminated against.
Zoning ordinance C-1377 was therefore not sufficiently protested to have required the affirmative vote of four of the five city commissioners but became effective upon the simple majority vote of three to two, there having been less than fifty per cent protest from any one of the three areas designated by the charter provision.
The final decree is reversed and the cause remanded for further proceedings in conformity with this opinion.
Reversed.
ALLEN and SHANNON, JJ., concur.
NOTES
[1] Emphasis in this opinion supplied.