## AUGUST, et al v. CITY OF POMPANO BEACH.
No. C-66-1542.

Circuit Court, Broward County.

December 8, 1966.

4

Weck, Harper & Stone, Pompano Beach, for plaintiffs.

Price & DiGiulian, Fort Lauderdale, for defendant.

A. J. Musselman, Jr., Pompano Beach, for the intervenors Bart E. Sullivan and A. J. Musselman, Jr.

LAMAR WARREN, Circuit Judge.

*Final decree:* In count one of their complaint for injunction against the city of Pompano Beach, the plaintiffs charged that an ordinance rezoning certain property from RC-1 (multiple family residential) and B-3 (central retail business) to B-2 (neighborhood business) was invalid because at the public meeting of the city commission at which the ordinance was purportedly adopted only three of the five city commissioners voted for adoption of the ordinance, although under §176.06, Florida Statutes, in case of a "protest against such change signed by the owners of twenty per cent or more * * * of the area of the lots * * * immediately adjacent in the rear thereof extending five hundred feet therefrom, * * * such amendments shall not become effective except by the favorable vote of three-fourths of the governing body of said municipality." The plaintiffs alleged that the owners of more than twenty per cent signed and filed protests.

In count two, the plaintiffs charged that there had not been such a general change in the neighborhood as would justify the adoption of the ordinance; that the ordinance would downgrade the zoning of the area of the rezoned property and constitute zoning erosion or spot zoning, without relation to the health, safety, morals or general welfare of the inhabitants of the city of Pompano Beach; and that the damage to plaintiffs would differ in kind, rather than degree, from that inuring to the community at large.

Turning to the second count first, the court finds that the evidence presented by the plaintiffs in support of the above allegations of that count was insufficient, the weight of the evidence clearly being with the city. In Sarasota County v. Walker, Fla., 144 So.2d 345, it was said that — "The courts should exercise caution in quashing a municipal ordinance or resolution by declaring it to be unreasonable, there being a peculiar propriety in permitting the inhabitants of a city through its proper officials to determine what rules are necessary for their own local government. (Citations.) With the increase in size and population of cities, new problems constantly develop which require revisions in the zoning structures within urban areas. * * *

No one has a vested right to require a zoning classification to remain constant, especially in an area of growth and changed conditions. * * *." The defendant city is entitled to a decree on the second count.

With respect to count one, the city first argued that the required percentage of protests received by it under §176.06, Florida Statutes, was insufficient, stating in its brief that out of a minimum requirement of 48,580 square feet, only 32,126 square feet were properly protested. The accuracy of these calculations is debatable.

Various reasons were assigned by the city for deeming other protests improper, which included the Townsend, Lombardi, Bonin and Schwartz protests, and the protests of only one spouse where property was held as an estate by the entirety. As to the Townsend, Lombardi and Bonin protests, their names appeared on the petition (plaintiffs' exhibit 9) submitted to the city, and the minutes of the city commission do not reflect that they were withdrawn, or not considered and recognized by the commission to be valid protests. It is true that there is a marked similarity in the signatures of Mr. and Mrs. Schwartz, however, the court is not in position to say that these signatures were those of one individual.

As to the signatures of only one spouse for properties held by the entirety, there is some question that this group should be excluded. In Marks v. Bettendorf's, Inc., 337 S.W.2d 585, the court reached the conclusion that where an area was signed for by only one owner of a tenancy by the entirety the required signatures were not obtained under a statute calling for the protest against a change to be signed by the "owners," the court ruling that — "tracts held by the entirety, where only one owner signed, should not have been counted in arriving at the amount of footage represented by the objectors". A strong dissent, however, pointed out that the majority of the cases hold to the contrary.

In 3 ALR 2d 127, Anno. *Public Improvement—Cotenants—Owners,* §3, the statement appears that — "Upon the theory that one cotenant has implied authority from the other cotenant to protect their joint interest in the property from all acts detrimental to the joint estate, the majority of the courts have concluded that a cotenant of property who signs a protest or remonstrance against a public improvement affecting the property, thereby places the entire property or the entire interest of the cotenants on the side opposed to the improvement, unless

the cotenant not signing the protest or remonstrance has clearly indicated his disapproval of the act of his cotenant." And in Woldan v. City of Stamford, 164 A.2d 306, the court held that — "Within the meaning of the ordinance involved in this case [which called for "owners" to sign], those owning the entire interest in the property must join to make a valid protest." In arriving at its decision the court nevertheless relied to some extent upon the case of Warren v. Borawski, 37 A.2d 364, which appears to be allied with the minority courts in the above annotation.

The court is of the belief that the city has included the area of the streets in its calculation above of 48,580 square feet. In B.R.M. Realty Corp. v. Flynn, 242 N.Y.S.2d 338, it was held that the zoning ordinance, which provided for protests to be made by the owners of twenty per cent or more of the "land" immediately adjacent extending two hundred feet therefrom, required the inclusion of the area of the streets within the two hundred feet, citing Hittl v. Buckout, 176 N.Y.S.2d 401. Also, see Bismarck v. Incorporated Village of Bayville, 244 N.Y.S.2d 529. No cases were found where streets were included when the statute used the word "lots," as in §176.06; it would seem therefore that the area of the streets should not be included in the calculation.

It was said in Hewett v. Bullard, 128 S.E.2d 41, that — "Zoning ordinances are in derogation of the right of private property, and where exemptions appear in favor of the property owner, they should be liberally construed in favor of such owner."

It is the opinion of the court that protests were received by the city signed by the owners of twenty per cent or more of the area of the lots immediately adjacent in the rear thereof extending five hundred feet therefrom, and this even though the protests of those owning lots as estates by the entirety, where only one owner signed, are excluded.

The city next stated in its brief that §176.06 was not applicable to the city, noting that the zoning amendment was effected pursuant to the provisions of §219 of the city charter. Section 219 resembles §176.05, Florida Statutes; nowhere in the charter is there found a section similar to §176.06. Under §255 of the charter only laws inconsistent with the charter are repealed or superseded. The case of Streep v. Sample, 84 So.2d 586, appears in point, wherein the court held that §176.06 controlled over a charter provision of the city of Fort Pierce which provided that a majority of all members, three or more, should constitute a quorum, but three votes were necessary to adopt an ordinance. An examination of the charter of Fort Pierce, as it existed at the

time of the decision, did not reveal a provision similar to §176.06; the effect of the decision therefore was to write the section into the city charter.

The defendant next cited Penny v. Durham, 107 S.E.2d 72, for the position that the property owned by the protestors is not "immediately adjacent in the rear" of the property rezoned due to the intervention of N. E. 2nd Street between their property and the property rezoned. An examination of that case shows that the court was concerned with the language "directly opposite." Because a buffer strip intervened between the rezoned property and the street, across which street the plaintiff's property was located, the court stated — "So it is our opinion that the expression 'directly opposite' when applied to the lands in this case means those tracts of land on opposite sides of the street with *only the street* intervening." (Italics added.)

For similar holdings, see Montebello Land Co. v. Frank Novak Realty Co., 172 A. 911, where 222 feet intervened between the rezoned property and the street, across which the plaintiff's land was located, and Parsons v. Town of Wethersfield, 60 A.2d 771, 4 ALR 2d 330, where a railroad intervened between plaintiffs' and defendants' land. With reference to the latter case, the statute was amended subsequent to eliminate the language "immediately adjacent."

Defendant's last contention has merit, i.e., even if §176.06 was held applicable and there was proof of sufficient written protests, the change in vote by Commissioner Fivek rendered count one of the complaint moot.

According to the minutes received in evidence, the ordinance claimed by the plaintiffs to be invalid passed on first reading on February 16, 1966, with four favorable votes and one unfavorable, and it passed on second reading on March 21, 1966, with three favorable votes and two unfavorable, Mr. Fivek casting one of the latter. On May 9, 1966, at a regular meeting, Mr. Fivek moved that the ordinance be placed on the agenda for the next commission meeting for reconsideration; the motion was passed unanimously. And on May 16, 1966, also a regular meeting, two motions were passed unanimously, the first that Commissioner Fivek be allowed to reconsider and recast his vote on the ordinance, and the second that the clerk be instructed to have the minutes reflect Commissioner Fivek cast an affirmative vote in consideration of the ordinance, the second motion following a statement by Mr. Fivek that he would like to change his vote to a yes vote.

The complaint in the instant litigation was filed April 12, 1966; the amended complaint, June 30, 1966.

During the trial of this cause Mr. Fivek was called as a witness, and he testified that on first reading he voted for the ordinance because "it was very good for the neighborhood," and that on the second reading he voted no, changing his vote because "an easement was handed to us, which was not given to us at the first reading, and I saw some restrictions on this easement which I wanted cleared. I figured that in the best interests of the city I didn't like the stipulation of the three-year clause where the city would have to use that easement or the easement would revert back to the original owners. And that is what I voted against on the second reading." In reply to the question, "had you changed your mind on the propriety of rezoning itself, aside from the easement?," he replied, "No." The witness added further, "I'll say that the cloud was removed from my objection, as to this easement, and the commission accepted the easement and I requested that this be put back on the agenda so I could vote yes on the original proposal." Upon being asked if it was true that the present lawsuit was filed prior to the time he changed his vote, he replied, "I know there was a lawsuit, but as to when the lawsuit was written I don't know anything about it. We haven't — or weren't given that information. All I was told was that there was a lawsuit — it was pending."

The power of municipalities to reconsider their vote upon measures before it is fully treated in 62 C.J.S., *Municipal Corporations*, §407, and in 37 Am. Jur., *Municipal Corporations*, §150.

The vote on May 9, 1966, upon the motion of Mr. Fivek to place the ordinance on the agenda for the next meeting was at a regular meeting, was unanimous, and was a formal proceeding expressly taken by the body as a whole. It was a valid determination by the commission in a proceeding before it. Tuell v. Meacham Contracting Co., 140 S.W.159; Dal Maso v. Board of County Commissioners, 34 A.2d 464; Rutherford v. City of Nashville, 79 S.W.2d 581.

The action on May 16, 1966 was that Commissioner Fivek be allowed to reconsider and recast his vote, the evidence showing that easement restrictions in which he was interested had been cleared. There was no evidence of pressure on him to change his vote — he always had been in accord on the merits of the ordinance; his words were that, "it was very good for the neighborhood." The evidence reflected that theretofore there had been

careful deliberation by the commission, the requisite number had in effect agreed on the ordinance, and it was the same ordinance.

This was not a situation where the commission was attempting to reconsider and reverse its previous action, or where the public was relying on unfavorable action — the ordinance to all intents and purposes had passed.

There was no evidence offered by the plaintiffs that the commission had violated any of its rules and order of business (§21, charter), Commonwealth v. Chase, 168 A.2d 569, or that it did not have a rule pertaining to reconsideration by the commission or by a member, or that the ordinance had been published (§24, charter), or that the commission did not have control over the ordinance or possession of it.

Rights of third parties had not vested, conditions not changed. The vote of Mr. Fivek was cast within a reasonable time under the circumstances, that is, the "cloud" of the easement disturbing him had been removed. Tuell v. Meacham Contracting Co., supra.

It is, therefore ordered, adjudged and decreed that the complaint be and the same is hereby dismissed, at the cost of the plaintiffs.