287 So.2d 377 (1973)
BANANA RIVER PROPERTIES, a Florida Corporation, Appellant,
v.
CITY OF COCOA BEACH, a Municipal Corporation, Appellee.
No. 72-900.
District Court of Appeal of Florida, Fourth District.
December 7, 1973.
Rehearing Denied January 23, 1974.
*378 William T. Taylor and Frank M. Wolfe of Wolfe, Kirschenbaum & Taylor, Cocoa Beach, for appellant.
William E. Weller of Rose & Weller, Cocoa Beach, for appellee.
MAGER, Judge.
This is an appeal by Banana River Properties, plaintiff below, from the entry of a summary judgment in favor of City of Cocoa Beach, defendant below.
The litigation arose as a consequence of plaintiff's efforts to have certain property rezoned. Plaintiff is the owner of property within the limits of the City of Cocoa Beach and petitioned the City of rezone the property in order to permit higher density residential use than that permitted under the existing zoning. Prior to the public hearing on the rezoning request more than 20 per cent of the owners of property lying to the rear of plaintiff's land and within 500 feet thereof filed formal objections with the City.
At the public hearing the five-member commission voted 3-2 in favor of plaintiff's rezoning request. However, subsequently the City apparently refused to implement its actions being of the view that under the provisions of Section 176.06, a 4-1 vote (approval) was required. In entering summary final judgment for the City the trial court implicity found that Section 176.06 was applicable; that the requirements thereof were met; and accordingly a 4-1 vote was required. It is from this order that the appeal ensued.
There are essentially two issues involved in this appeal: (1) whether Section 176.06 is applicable, and (2) if applicable, whether the requirements of said section were met.
Section 176.06 provides:
"176.06 Regulation, restriction and boundry subject to change or repeal; protest of change; vote required to effect change over protest; publication of notice of change required.  Regulations, restrictions, and boundaries may, from time to time, be amended, supplemented, changed or repealed. In case, however, of a protest against such change signed by the owners of twenty per cent or more either of the area of the lots included in such proposed change or of those immediately adjacent in the rear thereof extending five hundred feet therefrom, or of those directly opposite thereto extending five hundred feet from the street frontage of such opposite lots, such amendments shall not become effective except by the favorable vote of three-fourths of the governing body of said municipality. The provisions of § 176.05 relative to public hearings and official notice shall apply equally to all changes or amendments."
As to the first proposition, it is essentially the plaintiff's contention that the City was not bound by the earlier enacted provisions of Section 176.06, but, rather, the City's actions were governed by its own charter provisions. In this regard, Section 27 of Chapter 59-1187, Laws of Florida, (Charter of the City of Cocoa Beach) provides as follows:
"Section 27: No ordinance or resolution shall be passed or adopted by the City Commission unless at least three (3) Commissioners shall vote in favor thereof, and the ayes and nayes of each vote *379 shall be taken upon the passage of all ordinances and resolutions and shall be entered in the minutes of the proceedings of the City Commission."
As is readily apparent, Section 27 requires a simple majority vote (3-2), which was the original vote below; whereas, Section 176.06 (if applicable) requires a three-quarter vote (4-1). Plaintiff's contention is based on the assertion that Chapter 59-1187, being a special act of local application, supersedes Chapter 176, a general law; and, furthermore, that the City did not "elect" to take advantage of the provisions of Chapter 176, thereby rendering Section 176.06 inapplicable to its actions.
In analyzing plaintiff's contention it is necessary to consider and apply certain principles of statutory construction. In City of Pompano Beach v. Zoning Board of Appeals, Fla.App. 1968, 206 So.2d 52, 53, the court stated:
"`* * * It is of course true that general law can be superseded or effectively repealed by subsequently enacted special or local law. However, this is only true when the subsequently enacted statute either expressly so provides or is so inconsistent with existing general law as to constitute an implied repeal thereof.'" (Citations omitted.)
See also Southern Bell Telephone & T. Co. v. Town of Surfside, Fla. 1966, 186 So.2d 777. In 30 Fla.Jur. Statutes § 152, the author further observes:
"... However, before the courts will declare that one statute impliedly repeals another, it must appear either that there is positive repugnancy of such a nature that the two acts cannot, by a fair and reasonable construction, be reconciled or made to stand together, or that the later act revises the subject or was clearly intended to prescribe the only governing rule. In the absence of a positive repugnancy between the two statutes, before a repeal will be implied a clear legislative intention must be present. The mere fact that two statutes affect the same subject matter, when it is not clear that the later was designed to prescribe the only governing rules, is not sufficient. There should be no field in which the earlier statute can operate without conflict with the later."
Section 4 of Chapter 59-1187 provides, in part:
"Section 4. The City shall have the powers, functions, and immunities granted to municipal corporations by the Constitution and general laws of this State, as now or hereinafter existing, together with the implied powers necessary to carry into execution all the powers granted. The enumeration of particular powers by this Charter shall not be deemed to be exclusive, and in addition to the powers enumerated herein or implied hereby, or appropriate to the exercise of such powers, it is intended that the City shall have and exercise all powers which it would be competent for this Charter specifically to enumerate."
In a similar vein, Section 176.24 provides:
"This chapter shall not be construed to have the effect of repealing, impairing, or modifying any general or special law granting any like or similar powers to any municipality in the state, but the powers herein granted shall be supplemental and cumulative."

The foregoing quoted language, when read in light of the applicable principles of statutory construction, stand for the proposition that the provisions of an earlier general law (Sec. 176.06) and the provisions of a later special act (Sec. 27) must be read together, each complementing or supplementing the other and each must be given effect unless there is a positive repugnancy between the two. Walton County v. Board of Public Instruction, Fla.App. 1964, 161 So.2d 45. It is the duty of the court to reconcile any conflicts so that an implied repeal does not result.
*380 Turning now to Section 27, we find general language which sets forth the minimum number of votes in the adoption of an ordinance or a resolution, i.e., at least "three". Section 176.06, however, indicates, inter alia, that where a zoning ordinance is going to be changed and there is a protest (which subject matter is nowhere mentioned in the City Charter) such change cannot be effectuated unless there is a vote of three-quarters of the body, i.e., four votes. Each act, therefore, has a separate field of operation and each must be given effect. Section 27 relates to the enactment of ordinances generally; section 176.06 operates when a zoning ordinance is to be changed under protest.
The distinction between Section 27 and Section 176.06 was aptly recognized in Streep v. Sample, Fla. 1956, 84 So.2d 586. There the Supreme Court of Florida considered the significance of Chap. 176.06, and a charter provision relating generally to adoption of ordinances:
"A comparison of the two laws aligns us with the appellants. We think there is a distinction between them and a real purpose for the distinction. Under one, Section 9(n) of the charter, a majority of all members, three or more, shall constitute a quorum, but three votes are necessary to adopt an ordinance. If this section governed, then, the re-zoning ordinance was properly passed, regardless of protests and objections of citizens, so long as three commissioners approve, whether three, four or five are present.

"Doubtless the legislature thought that the amendment of a zoning ordinance in the face of proper protest was a matter of greater moment than that affected by the usual ordinance. The difference created by the protest at once becomes a distinction. Moreover Section 176.01, Florida Statutes 1953, and F.S.A., considered with 176.06, supra, confirms the view that we should not accept appellees' argument that in such a situation four votes would be required only if five members were present and three votes would suffice if four were present." (Emphasis added.)
We conclude, therefore, that there exists no positive repugnancy or conflicts between the provisions of Section 27 and Section 176.06; and that Section 27 would not impliedly repeal the provisions of Section 176.06. A further indication that a three-fourths (4-1) requirement would comport with the spirit and intent of the very charter of the City of Cocoa Beach may be gleaned from the concluding paragraph of Section 122, Chapter 59-1187, supra, as follows:
"The concurring vote of four (4) members of the Zoning Board of Appeals shall be necessary to reverse any order, requirement, decision or determination of the Planning and Zoning Board or any administrative official acting under authority of the Planning and Zoning Board, or to decide in favor of the applicant any matter upon which it is required to pass under any ordinance or to effect any variation in such ordinance." (Emphasis added.)
The foregoing provisions would require the concurring vote of four members of the Zoning Board of Appeals (which under the City Charter consists of either the City Commission or five members appointed by the City), where such zoning board action would "effect any variation in such ordinance." It is undisputed that the plaintiff sought and the City Commission acted upon a variance from the existing zoning.
With respect to plaintiff's contention that it was necessary for the City to "elect" (by some formal action) to avail itself of the provisions of Chapter 176 in order for Section 176.06 to be applicable, we find such contention to lack merit.[1] No *381 formal action on the part of the City is necessary to give rise to the applicability of any of the provisions of Chapter 176; but, rather, it is the very exercise of a power within the provisions of Chapter 176 that gives rise to the application thereof in the given case. For example, nowhere in the Charter of the City of Cocoa Beach is any reference made to the power of the City to amend, supplement, change or repeal a zoning ordinance particularly where a protest against such action has been evidenced. Therefore, it is not illogical to conclude that irrespective of the City's general authority to adopt ordinances, when the City sought to rezone and amend its existing ordinance accompanied by a protest, the power exercised was pursuant to Section 176.06.
It is interesting to observe that in the City of Pompano Beach case, supra, involving a provision of the City Charter and a provision of Chapter 176, this Court held Section 176.16 to be applicable irrespective of any "election". The application of the provisions of Chapter 176 was made dependent upon the particular facts of the case and the reconciliation between the provisions of general and special laws. The amendment of an existing zoning ordinance or a variation therefrom where public protests are lodged constitutes the "election" necessary to give rise to the application of Section 176.06.
Concluding as we do, that Section 176.06 was applicable to the City, a three-fourths (4-1) vote would be required unless the other applicable requirements of Section 176.06 were not met, i.e., persons protesting against any change in the ordinance be "owners of twenty per cent or more either of the area of the lots included in such proposed change or those immediately adjacent in the rear thereof extending 500 feet therefrom."
In the case sub judice, the properties owned by the protestors were situated to the rear of plaintiff's to-be-rezoned property and were separated from plaintiff's parcel by a waterway or canal 200 to 250 feet wide. The apparent question posed by this factual circumstance is whether the protestors' property, separated from this canal, can be deemed to be "immediately adjacent" to the plaintiff's property. Quite obviously if the phrase "immediately adjacent" requires the protestors' land to "abut" or "adjoin" plaintiff's property then the protestors would not fall within the class of persons enumerated in Section 176.06 (because of the intervening canal) and a simple 3-2 vote is all that would be necessary for the rezoning and the judgment of the lower court would have to be reversed.
Our research does not indicate any definitive construction of the phrase "immediately adjacent" by any court of this state.[2] Cf. City of Fort Lauderdale v. Des Camps, Fla.App. 1959, 111 So.2d 693. The highest courts of our sister states have had occasion to construe provisions substantially similar to those embodied within Section 176.06, and have concluded that the words "immediately adjacent", given their ordinary meaning and significance, mean "adjoining", "abutting", "with no space intervening", or "touching". Heaton v. City of Charlotte, 1971, 277 N.C. 506, 178 S.E.2d 352; Words and Phrases, vol. 20, p. 185. See also Rodgers v. Village of Menomonee Falls, 1972, 55 Wis.2d 563, 201 N.W.2d 29; St. Bede's Episcopal Church v. City of Santa Fe, 1973, 85 N.M. 109, 509 P.2d 876. In Heaton v. City of Charlotte, supra, involving a statute providing for the protest by "the owners of 20 per cent or more either of the area of the lots included in such proposed change or those immediately *382 adjacent thereto ...", the Supreme Court of North Carolina concluded in part:
"When we give the words `immediately adjacent' their ordinary meaning and significance as applied to the facts of this case, and liberally construe the ordinance in favor of the owner of the property to be zoned, we conclude that the expression means `adjoining' or `abutting.' This interpretation creates an area easily determinable which lends itself to definite calculations of the percentage required to invoke the provisions of the statute."
It is not the function of the court to read exceptions into Section 176.06 that the legislature, itself, has not so provided. We find no authority for this court to modify the words "immediately adjacent in the rear" by interlineating the phrase "except where there is an intervening body of land or water".[3] In this regard it is noteworthy to observe that the legislature in enacting Section 176.06, recognizes that a "street" could intervene (presumably in front of the affected property) but requires those property owners in the rear of the affected property to be located "immediately adjacent in the rear thereof". The rationale for permitting a street to intervene at the front and not require a similar intervening body of land or water to the rear is a question more properly addressed to legislative wisdom.[4]
In light of the foregoing we, therefore, conclude that the provisions of Section 176.06 are applicable to the facts and circumstances of this case; however, inasmuch as the protestors did not fulfill the requirements of said section a simple majority vote of the city council was all that was required (rather than the three-fourths vote provided in Section 176.06).[5] Accordingly, the summary final judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.
Reversed and remanded.
CROSS, J., and DRIVER, B.J., Associate Judge, concur.
NOTES
[1] Section 176.02 "... Wherever the governing body of any municipality shall elect to exercise any of the powers granted to it under this chapter, said powers shall be exercised in the manner hereinafter prescribed and in accordance with the charter of such municipality."
[2] A decision rendered by the Circuit Court of Broward County, on December 8, 1966, reported in 29 Fla. Supp. 3, appears to have touched on this question. Whatever effect that unappealed decision might have had, it is not controlling herein.
[3] It is interesting to observe, from the reported decisions in other states, the majority view that the right of affected property owners can be avoided by the establishment of a buffer zone by the applicant for a zoning change even though such buffer zone has been created to eliminate the requirement of a larger vote. See Heaton, St. Bede's Episcopal Church and Rodgers cases, supra. The record in this case is silent as to the origin of the intervening canal.
[4] It is to be noted, no doubt, that as a result of Parsons v. Town of Wethersfield, 1948, 135 Conn. 24, 60 A.2d 771, the Connecticut legislature eliminated the phrase "immediately adjacent" from the statute substantially similar to Section 176.06.
[5] The provisions of Chap. 73-129, Laws of Fla., which became effective on October 1, 1973, and which repeals Chap. 176 will not alter or effect the disposition of this appeal in view of the specific language set forth in Section 5(2) of said chapter.