## Singer v. Troy
*[Cite as 3 AOA 29]*

*Case No. 89-CA-40*
*Miami County (2nd)*
*Decided May 1, 1990*

*John P. Petzold of Altick & Corwin, 900 Talbott Tower, Dayton, Ohio 45402, Attorney for Plaintiffs-Appellants.*

*W. McGregor Dixon, Jr., of Shipman, Utrecht and Dixon Co., L.P.A., 12 South Plum Street, Troy, Ohio 45373, Attorney for Defendants-Appellees, City of Troy.*

BROGAN, J.

Appellants, Harold and Sonia Singer, ("Singers"), appeal from the judgment of the trial court denying their complaint for declaratory judgment.

In their complaint, filed May 10, 1988, the Singers requested that the court declare City of Troy Ordinance 1133.05 unconstitutional as applied to their property. The property in question, lot number 6893 containing 7 acres, is presently zoned R-2, permitting single family residences to be constructed thereon. The Singers petitioned to change the zoning from R-2 to R-5, a multi-family (apartment) classification.

Troy Ordinance 1133.05 states, in pertinent part:

"In case *** a protests against a change [in zoning] is presented, duly signed by *** twenty percent or more of the area of all the property within a radius of 200 feet of any area proposed to be changed, or those immediately adjacent to the rear thereof extending 200 feet therefrom, or of those directly opposite thereto extending 200 feet from the street frontage of such opposite lots, such amendment shall not become effective except by a favorable vote of three-fourths of all the members of Council."

As reflected in the minutes of their meeting of October 29, 1987, the Troy Planning Commission recommended approval of the proposed zoning amendment as it complied with the city's comprehensive plan of development. (Plaintiff's Ex. 20). On March 1, 1988, the City Council Law and Ordinance committee likewise recommended the Singers' proposal as "the best use of the

land in the best interest of the City." (Plaintiff's Ex. 19).

Nonetheless, the owners of properties within the 200 foot radius delineated by Troy Ordinance 1133.05 objected to the proposed rezoning. These property owners, whose lots are zoned solely for single-family use (R-2), objected for the following reasons:

"[T]he rezoning would unreasonably increase density of use, *** there is similar land in the City used for single family use, *** the specific application area is surrounded by single-family properties, *** there would be an adverse effect upon the enjoyment of the single-family homes surrounding this area, *** there would be an increase in traffic congestion caused by the multi-family use, *** the character of the neighborhood would change unreasonably." (Plaintiff's Ex. 18, Dec. 17, 1987 report of Law and Ordinance Committee).

Mr. Singer attempted to allay the fears of the neighboring property owners via a series of negotiations. These were not fruitful, as reflected in Mr. Singer's trial testimony:

"[W]e thought that they wanted three story apartments similar to the one that is now existing. And then we found that they changed their mind and did not want three story apartments. So we said we'll reduce them to two. Then they didn't want the road to come near their houses, so we moved the road away from them. And then they didn't want to have any units abutting them. And so we cut down the units to be two or three. Then they wanted to have further insulation, so we designed various landscaping. But no matter what we did we just couldn't satisfy them ***." (Tr. 42).

One hundred percent of the lot owners within the requisite 200 feet of the Singers parcel signed a petition against the proposed rezoning.

On March 7, 1988, the Troy City Council voted on the Singer proposal. Five of seven counsel members voted in favor of adoption of the proposal while two voted against it. Therefore, although a majority of the council approved of the rezoning, the proposal failed to pass by the three-fourths vote mandated by Troy Ordinance 1133.05.

Thereafter, the Singers filed their declaratory judgment action. At trial, the following information was adduced. Arthur Haddad, Troy Director of Public Service and Safety, testified regarding the adjacent property immediately west of the Singers' plot known as the "Favorite" property. The Favorite lot was zoned partially as R-3, single-family residential, and partially as R-5, multiple dwelling. (Tr. 13). The zoning designation of the Favorite lot occurred subsequent to the defeat of the Singer proposal. Haddad indicated that no part of the Favorite lot touched any currently inhabited single-family zoned property. (Tr. 18).

Carol Hastings, a member of City Council and Chairperson of the Law and Ordinance Comittee, testified that in her opinion, there was no difference in the acceptability of multi-family development between the Favorite and Singer properties except that the Singers' lot abuts single-family homes while the Favorite lot does not. (Tr. 24-25).

Harold singer testified as to his determination that multi-family housing was the best method by which to develop his property. (Tr. 35). He stated that with multi-family construction, each acre of land would be worth thirty to thirty-five thousand dollars and with single-family development an acre would be worth six to seven thousand dollars. (Tr. 36). Singer indicated that because the cost of single-family development would outweigh any profit, he would not develop the land residentially under the current (R-2) zoning classification. (Tr. 42-43). However, on cross-examination, Singer admitted that along with multi-family housing, the City of Troy was in need of single-family housing. (Tr. 44-46).

Finally, Councilman Thomas Redick testified that he was one of the two members of council who voted against the proposed rezoning. (Tr. 46-47). Redick indicated that his reasons for so voting were outlined in the December 17, 1987 report of the Law and Ordinance Committee despite the fact that that Committee ultimately recommended the rezoning. (Tr. 48). Redick was concerned that any multi-family development would impact excessively upon surrounding landowners due to the possibility that the proposed apartments would be built in very close proximity to the homeowners' property lines. (Tr. 56).

In an opinion filed June 7, 1989, the trial court upheld the constitutionality of Troy Ordinance 1133.05 and found that the zoning classification of the Singers' parcel was not arbitrary or confiscatory. It is from that judgment that the Singers now appeal.

Appellants' first assignment of error is as follows:

"COMPLIANCE WITH STATUTORY
PROCEDURE INVOLVING
ZONING AMENDMENTS BY NON-
CHARTER

MUNICIPALITIES IS MANDATORY."

Essentially, appellants contend that because Troy has not adopted a "home rule" charter, it is bound to follow the procedural regulations for self-government prescribed by the Ohio state legislature. Appellants argue that R.C. 713.12 governs the procedure for voting upon a zoning change and that Troy Ordinance 1133.05 conflicts with the state statue. Therefore, appellants conclude that Ordinance 1133.05 is unconstitutional, that 713.12 governs and that the City Council vote of 5-2 in favor of the proposal will permit rezoning of their property.

R.C. 731.17 governs the passage of ordinances and resolutions by non-charter cities and states, in pertinent part:

"Each ordinance or resolution shall be passed, except as otherwise provided by law, by a vote of at least a majority of all the members of the legislative authority." R.C. 713.12, governing notice and hearing on municipal zoning regulations, states in pertinent part:

"No ordinance, measure or regulation which is in accordance with the recommendations, plan or report submitted by the commission, board, or officer shall be deemed to pass or take effect without the concurrence of at least a majority of the members elected to the legislative authority."

The cases cited by appellants are inapposite because they do not address the issue at hand: "the requirement of 'at least a majority' vote necessary to enact local legislation."

We do not disagree that Troy, as a non-chartered city, is bound by the procedural legislative requirements of the state as reflected in R.C. 731.17 and R.C. 713.12. However, we find no conflict between Troy Ordinance 1133.05 and R.C. 731.17 or R.C. 713.12. Both of the state statutes require "at least a majority" vote of council to enact local legislation. As noted by appellee, neither of the state statutes requires passage of local legislation by "a majority" or "only a majority" or "no more than a majority." Rather, the plain statutory language permits municipalities to mandate that more than a majority of council members must approve certain legislation prior to its enactment.

Troy Ordinance 1133.05 comports with R.C. 731.17 and R.C. 713.12 in that it requires a vote of "at least a majority" of council in order to enact a change in zoning over the objection of neighboring property owners. We hold that the requirement of a "super-majority" vote under the instant circumstances is not prohibited because it is not contrary to the plain language of the relevant state statutes.

Appellants' first assignment of error is overruled.

Appellants' second assignment of error states:

"THE CONTINUED ZONING OF THE SINGER PROPERTY AS SINGLE FAMILY RESIDENTIAL IS SO UNREASONABLE AND ARBITRARY AS TO BE UNCONSTITUTIONAL."

Appellants cite five reasons in support of their claim of unconstitutionality:

"(1) the adjacent 'Favorite' property is partially zoned for multi-family use (R-5);

"(2) the Planning Committee noted that the proposed rezoning complied with the Troy Comprehensive Plan;

"(3) both the Planning Committee and the Law and Ordinance Committee recommended the rezoning;

"(4) the uninformed decision of councilman Redick prevented the passage of the proposal; (5) and the current single-family use zoning results in the loss of between 74% and 83% of the property value."

The issue for determination is whether proscription of the Singers' proposed land use is reasonably related to the advancement of a legitimate government interest. *Mobil Oil Corp. v. Rocky River* (1974), 38 Ohio St. 2d 23. If the reasonableness of Troy's zoning regulation is fairly debatable, it will be upheld. *Brown v. Cleveland* (1981), 66 Ohio St. 2d 93.

Our review of the trial court's judgment is circumscribed by the principles set forth in *Karches v. Cincinnati* (1988), 38 Ohio St. 3d 12:

"In reviewing the court's judgment, we are guided by the principle that judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence, *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578. Every reasonable presumption must be made in favor of the judgment and the findings of facts. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St. 3d 77, 10 OBR 408, 461 N.E. 2d 1273. Finally, if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment most favorable to sustaining the trial court's verdict and judgment. *Seasons Coal Co., supra*; *Gates v. Bdi. of Edn. of River Local School Dist.* (1967), 11 Ohio St. 3d 83,

340 O.O. 3d 91, 228 N.E. 2d 298; *Ross v. Ross* (1980), 64 Ohio St. 2d 203, 204, 18 O.O. 3d 414, 415, 414 N.E. 2d 426, 428."

Appellants bear the burden of proving that the single-family zoning restriction is unconstitutional as applied to their property. *See. Brown v. Cleveland, supra.* We find that appellants have not been successful in this endeavor.

The case of *Leslie v. Toledo* (1981), 66 Ohio St. 2d 488, is similar to the one at bar. In *Leslie,* plaintiff-property owner desired to change the zoning of his lot from R-2 (single family) to C-2 (office district). Although the city Planning Commission recommended approval, City Council voted against the proposed rezoning. Plaintiff filed a declaratory judgment action and sought to have the R-2 classification declared unconstitutional. The trial court found against plaintiff and dismissed his complaint. The court of appeals reversed, finding that the R-2 classification was arbitrary and bore no relationship to the community's health, safety, morals or general welfare. The Supreme Court reversed and reinstated the judgment of the trial court.

The *Leslie* Court reviewed City Council's rationale in refusing to grant plaintiff's proposal:

"The city council's decision not to alter the subject property's status ***, with the concomitant change in the neighborhood's traffic patterns, is rationally related to several hazards which the city may lawfully regulate pursuant to its police powers: protection of pedestrians and drivers, regulation of traffic congestion and on-street parking, and reduction of air and noise pollution." *Leslie, supra,* at 492.

Further, the Court noted that "the mere existence of some adjacent property devoted to other uses does not destroy the character of restricted property *** or render the restrictions arbitrary." *Id.* at 490, citing *Wilkins v. San Bernardino* (1946), 29 Cal. 2d 332, 344.

The concerns of Councilman Redick, which motivated him to vote against appellants' proposal, are akin to those discussed by the *Leslie* Court. We find that increased traffic congestion, maintenance of the single-family nature of the neighborhood, and increased population density are legitimate governmental concerns justifying the R-2 classification.

Additionally, as indicated in *Leslie,* the zoning classification of adjacent property is not determinative of the constitutionality of the zoning of the lot at issue. Therefore, the fact that the "Favorite" property is zoned R-5 does not render the failure of council to similarly zone the Singers' property arbitrary or unreasonable.

With respect to appellants' contention that the failure to rezone their property results in the loss of between 74% and 83% of its value, the following well established law was reviewed by the Cuyahoga County Court of Appeals:

"The general rule is that hardship, limitation of use or diminution or increase of value of private property does not in itself render a zoning measure unconstitutional or invalid. Indeed, a zoning ordinance is not necessarily invalid although it is harsh and seriously depreciates the value of property involved. Nor is the test of the validity of a zoning measure its financial advantage or disadvantage to the owner arising from the measure or its enforcement.

"* * *

"Mere diminution of market value or interference with the property owner's personal plans and desires relative to his property is insufficient to invalidate a zoning ordinance or to entitle him to a variance. Similarly the fact that property is more valuable for an excluded use does not in itself void a zoning restriction. ***." *Cleveland Trust Co. v. Brooklyn* (1952), 92 Ohio App. 351, 363 quoting 8 McQuillen on Municipal Corporations 82 Section 25.44. (*See also, Grant v. Kiefaber* (1960), 114 Ohio App. 279).

Having found that the purpose of the R-2 restriction is not unreasonable, the diminution in value of the Singers' property is not conclusive of the issue of constitutionality. Further, Mr. Singer testified regarding the need for single-family housing in Troy. Therefore, the property in question has not been rendered valueless by virtue of the R-2 classification.

The words of the Ohio Supreme Court in *Willott v. Beachwood* (1964), 175 Ohio St. 557, 560, are instructive:

"Even though the court, on the facts presented, might decide otherwise than did council, so long as the matter is reasonably debatable, the court has no authority to interfere. The power of a municipality to establish zones, to classify property, to control traffic and to determine land-use policy is a legislative function which will not be interfered with by the courts unless such power is exercised in such an arbitrary, confiscatory or unreasonable manner as to be in violation of constitutional guaranties."

For the foregoing reasons, appellants' second assignment of error is overruled.

Appellants' third assignment of error is as follows:

"DELEGATION OF LEGISLATIVE POWERS OF CITY COUNCIL TO PRIVATE INDIVIDUALS IS A VIOLATION OF DUE PROCESS."

Appellants argue that "[a]llowing protesting landowners to force a super-majority vote of a governmental entity when passing [sic] a zoning amendment is in effect delegating the legislative powers of the City Council to private individuals ***." (Brief of Appellants, p. 17). We disagree.

The final decision regarding whether or not a zoning amendment will be enacted ultimately rests with Troy City Council. That 20% or more of the property owners who would be most affected by the zoning change may mandate the three-fourths vote only reflects the democratic goal of requiring that local government be responsive to the concerns of all citizens.

Although research has revealed no Ohio cases on point, our analysis is supported by the Illinois case of *Bredberg* v. *Wheaton* (1962), 182 N.E. 2d 742, 24 Ill. 2d 612. Therein, the owners of two parcels of land, Booth and Snyder, requested a change in zoning from class A residential to class A commercial. The Bredbergs owned a contiguous tract, zoned class A residential, which adjoined the full length of the two parcels at issue. The Bredbergs filed a written protests against the rezoning. Nonetheless, the 5 man city council passed the proposal by 3 to 2.

The Bredbergs filed a complaint to void the rezoning as it had not received the requisite two-thirds vote necessitated by their protest pursuant to State and local laws. Booth and Synder filed a counterclaim seeking to have the super-majority voting provision declared an unconstitutional delegation of legislative powers to private citizens.

The statute at issue in *Bredberg* is analogous to the one at bar:

"In case of a written protest against any proposed amendment of the regulations or districts, signed and acknowledged by the owners of twenty percent of the frontage proposed to be altered, or by the owners of twenty percent of the frontage immediately adjoining or across an alley therefrom, or by the owners of twenty percent of the frontage directly opposite the frontage proposed to be altered, is filed with the clerk of the municipality, the amendment shall not be passed except by a favorable vote of two-thirds of all of the aldermen or trustees of the municipality". *Bredberg, supra,* at 746. The Illinois Supreme Court reasoned:

"Discretion as to what the law shall be still rests with the municipal authorities, who are still free to amend or retain their ordinance as they choose. And although the effect of the written protest is to require a greater percentage of the vote of a municipality's governing body, the better reasoned authorities agree that no delegation of the legislative power results. This view which we adopt, was recently expressed in Farmer v. Meeker, 1960, 63 N.J. Super. 56, 163 A.2d 729, at 733, as follows:

"These constitutional attacks are founded in a misconception of the nature of the protestants' power. Rather than being legislative, it is merely an exercise of the inherent right of the people to petition their government for redress of grievances, ***." *Id.*

We find this logic persuasive and overrule appellants' third assignment of error.

In accordance with this opinion, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WOLFF, P.J., and GRADY, J., concur.