OPINION
In a zoning dispute, defendant-appellant/cross-appellee, Union Township Board of Trustees ("Union Township"), appeals the decision of the Clermont County Court of Common Pleas that certain property ("the property") located adjacent to State Route 32 was unconstitutionally zoned "R-2" (single-family residential). In a cross-appeal, plaintiff-appellee/cross-appellant, MDJ Properties, Ltd. ("MDJ"), appeals the decision of the trial court refusing to rezone the property "B-1" (business zone) and denying MDJ's request for an award of damages and attorney fees. For the reasons that follow, we reverse the finding of the trial court that the R-2 zoning classification of the property is unconstitutional.
On May 10, 1996, MDJ filed a complaint for declaratory judgment and money damages against Union Township. MDJ alleged that the R-2 residential zoning was unconstitutional as applied to certain property owned by MDJ located adjacent to State Route 32. MDJ further alleged that the residential zoning deprived MDJ of all economically viable use of the property, resulting in an unconstitutional "taking" of the land. The property borders Marjorie Drive on the north, Bells Lane on the west, and State Route 32, a four-lane highway, on the south. The east side of the property borders vacant land with a thick stand of trees; multi-family residential housing and a convenience store are farther east beyond the vegetation. The adjacent land is zoned R-2 to the north and west, and B-2 (business zone) to the west and the south, across State Route 32.
The case proceeded to a bench trial on July 14, 1997. On September 16, 1997, the trial court found the existing zoning unconstitutional under Gerijo v. Fairfield (1994),70 Ohio St.3d 223. The trial court provided Union Township with a reasonable opportunity to rezone the property. See UnionOil Co. v. Worthington (1980), 62 Ohio St.2d 263, 267 (upon a finding that zoning is unconstitutional, as applied to a certain property, the zoning authority is entitled to exercise the option to rezone the property within a reasonable time). Union Township failed to rezone the property. On November 7, 1997, the trial court ordered a further hearing on appropriate rezoning of the property and possible damages. See id.
On May 13, 1998, before the rezoning and damages hearing had occurred, MDJ moved for summary judgment on all further issues. Specifically, MDJ argued that, pursuant to the intervening decision of the Supreme Court of Ohio in Goldberg Cos., Inc.v. Richmond Hts. City Council (1998), 81 Ohio St.3d 207, the property was free from the unconstitutional zoning restrictions and MDJ could develop the property in any manner MDJ deemed appropriate. Therefore, MDJ argued that the case should be terminated. MDJ conceded that the Goldberg decision foreclosed MDJ's damages claim. The trial court disagreed with MDJ's interpretation of the Goldberg decision that a hearing need not be held on appropriate rezoning of the property. The trial court overruled MDJ's motion for summary judgment.
The case proceeded to the previously ordered hearing. At the hearing, MDJ proposed rezoning the property as B-1. After the second hearing, the trial court found that the B-1 classification was not appropriate and failed to award MDJ any relief. Union Township filed a notice of appeal and MDJ filed a notice of cross-appeal. We first consider Union Township's appeal.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED HOLDING APPELLANT'S R2 ZONING UNCONSTITUTIONAL UNDER THE FACTS AND APPLICABLE LAW OF THE CASE.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED HOLDING THAT LEGITIMATE GOVERNMENTAL INTERESTS ARE NOT SERVED BY EXISTING R2 ZONING.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN NOT DISMISSING APPELLEE'S CLAIMS FOR REZONING AND DAMAGES AND IN NOT ENTERING FINAL JUDGMENT FOR APPELLEE [sic] UNDER THE FACTS OF THIS CASE.
In its assignments of error, Union Township essentially challenges the decision of the trial court finding that the R-2 zoning classification was unconstitutional as applied to the property and that it deprived MDJ of all economic use of the property. For purposes of clarity, we will consider Union Township's assignments of error simultaneously.[1]
In reviewing the decision of the trial court, we are guided by the principle that judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus; see, also, Shemo v. MayfieldHeights (2000), 88 Ohio St.3d 7, 8-9. If the evidence is susceptible to more than one interpretation, we must interpret it consistently with the judgment of the trial court. SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
A landowner can challenge the constitutionality of a zoning ordinance in two ways. First, a landowner can allege that a zoning ordinance is unconstitutional as applied to a particular parcel of land. Goldberg Cos., 81 Ohio St.3d at 213. Second, a landowner may also allege that a zoning ordinance as applied to property constitutes a "taking" in violation of theFifth Amendment to the United States Constitution that entitles the owner to compensation. Id.
MDJ challenged the constitutionality of the property's zoning classification on both grounds. The trial court's analysis underGerijo effectively found that the zoning was unconstitutional as applied to the property and that it also constituted a taking. We will consider each ground in turn.
 I. Constitutionality of the Zoning Ordinance as Applied
Zoning ordinances are presumed constitutionally valid.Cent. Motors Corp. v. Pepper Pike (1995), 73 Ohio St.3d 581,584. Therefore, a zoning regulation is presumed to be constitutional unless the landowner demonstrates beyond fair debate that it is "clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community." Goldberg,81 Ohio St. 3d at 213, quoting Euclid v. Ambler Realty Co.
(1926), 272 U.S. 365, 395.[2] The party challenging the constitutionality of a zoning classification bears the burden of proof and must prove unconstitutionality beyond fair debate.Goldberg at paragraph two of the syllabus. The standard of "beyond fair debate" in zoning litigation is analogous to the standard of "beyond a reasonable doubt" standard in criminal law. Cent. Motors. Corp., 73 Ohio St.3d 581
at 584.
Witnesses for Union Township testified that R-2 zoning of the property substantially advances the following governmental interests: public safety vis-a-vis increased traffic, maintenance of tax values, protection of the existing residential character of the neighborhood, maintenance of the density of development permitted by existing zoning, maintenance of the base values of existing residences, and maintenance of stable and predictable growth by following the township's land use development plan.
The trial court only addressed tax values and traffic safety in its decision, finding that neither of these interests was substantially advanced by the R-2 zoning designation of the property. The trial court's decision also appears to inappropriately place the burden on Union Township to defend its zoning classification. Since the trial court failed to address all of the interests advanced by Union Township, we must consider each interest and determine whether MDJ proved beyond fair debate that the zoning is clearly arbitrary and unreasonable and without substantial relation to public health, safety, morals or general welfare of the community.
In reviewing the evidence, we begin with the premise that a reviewing court must be very reluctant to substitute its judgment for that of the body responsible for applying zoning ordinances.Ketchel v. Bainbridge Twp. (1990), 52 Ohio St.3d 239,246, certiorari denied, (1991), 498 U.S. 1120.
 The determination of the question of whether regulations prescribed by a zoning ordinance have a real or substantial relation to the public health, safety, morals or general welfare is committed, in the first instance, to the judgment and discretion of the legislative body. Where such a judgment deals with the control of traffic, volume of traffic, burden of traffic, effect upon valuation of property, municipal revenue to be produced for the city, expense of the improvement, land use consistent with the general welfare and development of the community as a whole, or, in short, where the judgment is concerned with what is beneficial or detrimental to good community planning, it is in the first instance a legislative and not a judicial matter. The legislative, not the judicial, authority is charged with the duty of determining the wisdom of zoning regulations, and the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable.
Ketchel, 52 Ohio St.3d at 246, quoting Willott v.Beachwood (1964), 175 Ohio St. 557, 560 (emphasissic).
We begin with Union Township's interests in maintaining predictable growth and the density of development permitted by existing zoning. In support of these interests, Union Township offered into evidence Union Township's Plan 2015, which serves as a general blueprint for land development in Union Township. Union Township created the plan in 1988 with the assistance of a planning consultant and a representative group of township citizens. The plan recommended that the subject property remain zoned generally for residential uses, and classified as R-2 in particular. The township revised the plan in 1994 after conducting public hearings, but no changes were made to the recommended uses of the property.[3] The 1994 revision also recommended that Union Township should maintain the density of development permitted by the existing zoning. At trial, Union Township noted that the property has been zoned R-2 continuously since 1959 and this classification has a maximum density of four dwellings per acre.
It is a generally accepted principle that zoning may be used to promote the orderly development of land, even if it restricts development of residential and industrial uses within separate "definitely fixed lines." Euclid, 272 U.S. at 389. In fact, zoning is a legislative exercise which determines land use policies and attempts to determine the use classifications of parcels of land that are most beneficial to the community. SeeWillott, 175 Ohio St. at 560.
Zoning regulations may also be used to control the density of development. Ketchel v. Bainbridge Twp.,52 Ohio St.3d at 242. Controlling density protects the citizens of the community from the "ill effects of urbanization." ZeltigLand Dev. Corp. v. Bainbridge Twp. Bd. of Trustees (1991),75 Ohio App.3d 302, 308 quoting Agins v. Tiburon
(1980), 447 U.S. 255, 261. Maintaining a single-family residential zoning classification can be used to control density of development. Singer v. Troy (1990), 67 Ohio App.3d 507
at 514.
MDJ, through its land use expert Menelaos Triantafillou, contended that zoning consistent with Plan 2015 does not substantially advance any legitimate governmental interest because the plan is not legally binding on Union Township. Triantafillou opined that the plan was "just an exercise" having "no value." He asserted that the plan could not predict development, but that it was an expression of how the township would "wish [land development] to be." In its decision, the trial court also emphasized the fact that the plan was not legally binding and that it served the primary purpose of providing guidance in zoning decisions.
Neither the arguments advanced by MDJ nor the trial court's analysis demonstrate that the R-2 zoning of the property is clearly unreasonable or that it fails to substantially advance the legitimate interest of promoting orderly development of land in Union Township. The fact that Plan 2015 is not "binding" does not effect whether the plan or zoning decisions guided by it serve a legitimate government interest. Union Township is not trying to alter the zoning of the property arbitrarily in a manner that is inconsistent with Plan 2015, but rather it ispreserving the residential use of the property and maintaining the density of development consistent with Plan 2015. Such action is clearly not arbitrary and serves Union Township's interest in promoting predictable and stable land development.
Union Township also asserted that the zoning of the property advanced the preservation of the existing residential character of the neighborhood, maintenance of the base values of existing residences and preservation of low-density development.
A local government may "properly exercise its zoning authority in an attempt to preserve and protect the character of designated areas" to promote "the overall quality of life." FranchiseDevelopers, Inc. v. Cincinnati (1987), 30 Ohio St.3d 28, 33;James Place Properties, Inc. v. Madison Twp. Bd. ofTrustees (Sept. 25, 1998), Lake App. No. No. 97-L-143, unreported. Preserving the character or nature of a neighborhood is also a legitimate governmental concern that can be addressed by the use of zoning. Singer, 67 Ohio App.3d at 514.
Challenging these interests, Triantafillou testified that the significant changes in the general area surrounding the property, including the construction of State Route 32 and the development of the surrounding Eastgate area, demonstrate that property is situated in an area that has a "predominately non-residential character." In addition, he noted that there exists a church and multi-family housing relatively adjacent to the property and a large grocery store to the south of the property. Triantafillou also opined that the property lacked the benefit of "being an intricate part of a greater subdivision" such that any single-family homes would presumably "never be able to maintain the[ir] value." Moreover, the trial court and MDJ also note that the Clermont County Planning Commission indicated that R-2 zoning is not the most clearly reasonable or appropriate designation for the property.
The evidence presented by MDJ does not demonstrate that the R-2 zoning classification is unreasonable, arbitrary or fails to substantially advance the interest of preserving the residential character of the neighborhood. Although State Route 32 and a large store are situated to the south, single and multi-family residences also surround the property. The nearby church does not vitiate the largely residential character of the neighborhood, as it is expressly authorized as a conditional use under Union Township's R-1 and R-2 zoning classifications.
"The mere existence of some adjacent property devoted to other uses does not destroy the character of restricted property for residential purposes or render restrictions arbitrary."Leslie v. City of Toledo (1981), 66 Ohio St.2d 488, 489
(finding residential zoning reasonable and constitutional even though shopping centers, gasoline stations and other commercial establishments were within the general vicinity of the subject property); cf. Shemo, 88 Ohio St.3d at 11 (finding residential classification unreasonable where property was adjacent to an interstate highway carrying over ninety-two thousand vehicles a day, a Best Buy store, a Budgetel Motel, a Bob Evans restaurant and approximately a total of three-quarter million square feet of retail space). Additionally, "[t]he mere fact that property is not zoned for its highest value and best use does not alone invalidate a zoning ordinance."Ketchel, 52 Ohio St.3d at 243. At best, the evidence demonstrates that this issue is fairly debatable and more suited for the judgment of the legislative body. See Willott,175 Ohio St. at 560.
Union Township also maintained that residential zoning of the property would provide a higher tax base for the township. Zoning may be properly used for the purpose of increasing or maintaining property values to advance the prosperity and economic conditions of a community. Willott,175 Ohio St. at 559. However, the trial court correctly concluded from the evidence that this interest is not supported by residential zoning because Union Township retrieves higher tax revenues from commercial and industrial property.
Finally, Union Township maintained that R-2 zoning of the property advances issues of traffic safety and is necessary to avoid traffic congestion. The trial court concluded that the traffic impact of the proposed zoning was insignificant. The trial court also indicated that even if traffic was an issue, Union Township must find an alternative manner of addressing the issue because "traffic issues must be secondary to the rights of the property owner * * *."
Local governments may lawfully regulate safety hazards related to roads including "protection of pedestrians and drivers, elimination of traffic congestion and reduction of noise and air pollution." Columbia Oldsmobile v. City of Montgomery
(1990), 56 Ohio St.3d 60, 67; see, also, Smythe v. ButlerTownship (1993), 85 Ohio App.3d 616, 622. However, controlling traffic alone is not a primary purpose of zoning and if the proposed use of the land is appropriate given the context of the surrounding property, then traffic regulation must be a secondary consideration. State ex rel. Killeen Realty Co.v. City of E. Cleveland, 169 Ohio St. 375, 386; PureOil Division v. Brook Park (1971), 153 Ohio App.2d 153, 158
(when "the subject property is located in an area with heavy traffic, and the conclusion has been reached that the property can be used commercially only, the problem of additional traffic hazards must be secondary * * *"). Yet, traffic considerations may be sufficient to justify a particular zoning restriction if otherwise part of a comprehensive zoning scheme. ColumbiaOldsmobile, 56 Ohio St.3d 60 at 67; Bryco Co. v.Milford (Oct. 4, 1999), Clermont App. No. CA99-04-033, unreported.
Although Union Township cannot attempt to advance only governmental interests in traffic safety by maintaining R-2 zoning, the trial court incorrectly implied that traffic considerations have no place in legislative determinations of property classification. Traffic issues can be a consideration in zoning decisions, but they cannot prevent otherwise appropriate commercial or business classification. The evidence demonstrates that traffic does not pose a significant issue on the existing streets under current zoning. The evidence also demonstrates that a more intensive use, such as that proposed by MDJ, would at least create a need for a roadway plan with sufficient capacity to properly accommodate traffic associated with such a use. Union Township can appropriately consider issues of traffic safety in conjunction with other legitimate governmental issues in determining the zoning of the property.
In summary, all of the interests advocated by Union Township regarding the zoning of the property are legitimate government interests for which property may be constitutionally zoned. MDJ demonstrated beyond fair debate that the R-2 classification fails to substantially advance Union Township's interest in creating a higher tax base. However, MDJ failed to meet its burden of proving beyond fair debate that all of the remaining interests were arbitrary, unreasonable or without a substantial relationship to the interests sought to be advanced. Therefore, the trial court incorrectly determined that R-2 zoning was unconstitutional as applied to the property.
 II. Whether the Zoning Ordinance Constitutes a "Taking"
The Fifth Amendment to the United States Constitution provides in part that private property shall not be taken for public use without just compensation. The "takings clause" of theFifth Amendment applies to the individual states by virtue of theFourteenth Amendment to the United States Constitution.Chicago Burlington Quincy RR. Co. v. Chicago (1897),166 U.S. 226; see, also, Section 19, Article I, Ohio Constitution (providing for compensation "where private property shall be taken for public use").
A state or local government can "take" property either by direct appropriation or by a regulation that "goes too far" so that the regulation "will be recognized as a taking."Pennsylvania Coal v. Mahon (1922), 260 U.S. 393, 415. A regulation "goes too far" when it denies the landowner all economically beneficial or productive use of the land.Lucas v. South Carolina Coastal Council (1992),505 U.S. 1003, 1019. "[W]hen the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking."Lucas, 505 U.S. at 1019 (emphasis sic).
Therefore, to prove that a zoning ordinance results in a regulatory taking, the landowner must prove that the application of the ordinance has infringed upon the landowner's rights such that there is no economically viable use of the land.[4] Goldberg, 81 Ohio St.3d at 210. There is no economically viable use of land when "the permitted uses are not economically feasible, or the regulation permits uses which are highly improbable or practically impossible under the circumstances." Valley Auto Lease of Chagrin Falls Inc.v. Auburn Twp. Bd. of Zoning Appeals (1988), 38 Ohio St.3d 184,186; Ketchel, 52 Ohio St.3d at 243-44. A landowner does not have a right to have his land zoned for its most advantageous economic use. Smythe,85 Ohio App.3d at 621. In addition, the fact that land has been rendered less valuable by zoning is insufficient to demonstrate an unconstitutional taking. Valley Auto,38 Ohio St.3d at 186. "Something more than loss of market value or loss of comfortable enjoyment of the property is needed to constitute a taking." State ex rel. BSW Dev. v. Dayton (1998),83 Ohio St.3d 338, 345. Thus, the landowner must demonstrate that the zoning restrictions render the property effectively valueless, without any economically beneficial use such that the landowner should be compensated. Ketchel,52 Ohio St.3d at 245; Lucas, 505 U.S. at 1019.
The R-2 zoning classification of the property in this case generally permits MDJ to use the land for single-family detached dwellings, public recreation, group residential facilities, farming, agricultural uses, animal husbandry, veterinary establishments and family day care homes. The zoning classification also permits conditional uses such as churches, schools, libraries, museums, art galleries, hospitals, country clubs and other private recreational facilities.
At trial, MDJ presented expert testimony to demonstrate that the R-2 zoning classification deprives the property of all economically beneficial uses. In order to maximize the amount of development on the property, Triantafillou analyzed the feasibility of constructing a ten lot single-family residential development on the property consisting of homes with an area of approximately two thousand two hundred square feet. MDJ presented evidence that homes constructed in its hypothetical subdivision would sell for a price between $170,000 and $200,000 per home, while surrounding dwellings have only sold for a maximum of $110,000. Based on the evidence relating to MDJ's analysis, the trial court concluded that the zoning regulation denies MDJ all economically feasible uses of the property. In its decision, the trial court did not address the remaining permitted uses of the property.
We conclude that the trial court erred in finding on the evidence presented at trial that the R-2 classification of the property deprives MDJ of all economically feasible uses. First, the trial court's decision and MDJ's evidence regarding the hypothetical development focused solely on most viable and profitable single-family residential development that could be constructed on the property. Thirty-two percent of MDJ's overall cost analysis consisted of builder profits, developer profits and real estate commissions. MDJ's experts also admitted that seventy-five to eight-five percent of the land development costs were only necessary to build five of the ten homes. High land development costs are associated with a portion of the property because of existing low areas, seasonal wetlands and a lake. Further, evidence at trial indicated that it may be feasible to build fewer single-family homes on the property. The R-2 zoning cannot be found unconstitutional on the basis that it is not profitable for MDJ to maximize development of the land. It must first be shown that it is impossible or impractical to build any single-family residential homes on the property.
Second, MDJ did not meet their burden of proof because they did not show that all possible uses under the R-2 zoning classification were economically infeasible. MDJ provided evidence of economic infeasibility only as to its hypothetical ten lot residential development. Triantafillou testified simply that, based on his experience as a planner, that none of the other permitted uses were feasible for the site without conducting any detailed economic analysis. He further stated:
 I did not take each use in the permitted or conditional uses in the zoning code and do a layout or a physical analysis of the cost to build such a use. Based on my knowledge of the property, I ruled out all of them for reasons that I know they're not feasible. And the feasibility in this case is the relationship, its constraints and the physical demands that a particular use that is permitted would have if it were to be developed on this site [sic].
 This testimony fails to meet MDJ's burden of proving that all permitted and conditional uses are economically feasible. See Ketchel, 52 Ohio St.3d at 245 (holding that a party failed to meet their burden of proof demonstrating that R-3A residential zoning was unconstitutional because they did not show that all
possible uses, including churches, schools, public recreation, governmental buildings and cemeteries were economically infeasible).
Finally, we note that MDJ purchased the property with full knowledge of the existing zoning classifications and the difficulties in modifying the zoning. The trial court was similarly troubled by these facts. The Ohio Supreme Court has noted that application of an existing zoning ordinance to property can hardly be a confiscatory taking when the landowner purchases a property with knowledge of existing zoning.Community Concerned Citizens, Inc. v. Union Twp. Bd. ofZoning Appeals (1993), 66 Ohio St.3d 452, 457-58
(emphasizing that a landowner's "bundle of rights" cannot be held subject to the government's subsequent decision to eliminate all economically beneficial uses without compensation being paid to the owner). This case is not about a governmental regulation that subsequently deprived MDJ of all economically beneficial uses of the property. MDJ purchased the property with knowledge of the existing zoning classification. After MDJ was unsuccessful in having the property rezoned for its intended business use, MDJ then asserted a legal claim that the zoning classification was unconstitutional. As we have stated in prior cases, one who purchases property with the knowledge of the current zoning restrictions may not challenge the constitutionality of the existing zoning ordinance merely because he may lose a more generous profit if a change in zoning is not made. E.g., Holiday Homes v. Miami Twp. Bd. ofTrustees (Oct. 19, 1992), Clermont App. Nos. CA91-11-096, CA91-11-097, unreported.
Accordingly, appellant's assignments of error are sustained. The judgment of the trial court is reversed.
 MDJ's Cross-Appeal
In its cross appeal, MDJ raises four assignments of error. MDJ asserts that the trial court erred in conducting further proceedings to determine appropriate zoning of the property after finding that the R-2 classification was unconstitutional. MDJ further argues that the trial court erred by denying its request to rezone the property B-1 on the basis that such a classification would create substantial traffic issues. MDJ challenges the trial court's finding that an award of attorney's fees and damages was not ripe for decision.
Since we have determined that the trial court incorrectly determined that the R-2 zoning classification was unconstitutional as applied to the property and a "taking," MDJ's cross-appeal and assignments of error contained therein are overruled as moot.
Judgment reversed.
YOUNG and VALEN, JJ., concur.
[1] Union Township's third assignment of error is ambiguous as it fails to precisely assert the matter in which the trial court erred. See Loc.R. 11(B)(3). Since the argument appears to be a diatribe about the need for courts to defer to legislative bodies in matters of zoning, we will construe the assignment of error as also challenging the trial court's decision that the zoning in this case was unconstitutional.
[2] The enabling statute that grants zoning powers to townships states that a township may enact zoning regulations for "the purpose of promoting health, safety and morals." R.C.519.02. Municipalities have a broader grant of power and may zone "in the interest of the public health, safety, convenience, comfort, prosperity or general welfare." R.C. 713.06. The enabling statute for townships does not encompass the concept of general welfare. However, the supreme court inGoldberg did not distinguish between townships and municipalities when it adopted the Euclid test for determining the constitutionality of a zoning regulation, stating: "A municipality or other zoning body is justified by its police powers to enact zoning for the public welfare and safety." Goldberg,81 Ohio St.3d at 514-15; see, also, Wilson v. Trustees Union Twp.
(Oct. 26, 1998), Clermont App. No. CA98-06-036, unreported (applying Goldberg to township zoning). Therefore, we will apply the Goldberg test, including the concept of general welfare, to the township in this case since we are bound by and must follow the decisions of the Ohio Supreme Court as law. See Rumpke Road Dev. Corp. v. Union Twp.Bd. of Trustees (1996), 115 Ohio App.3d 17, 21.
[3] Apparently MDJ's principal attended these meetings and objected to the recommendation that the property should be maintained for residential development.
[4] The United States Supreme Court has stated that a taking can also occur when a land use regulation does not substantially advance legitimate state interests. See,e.g., Agins v. Tiburon (1980), 447 U.S. 255,260. Yet, the Ohio Supreme Court in Goldberg concluded that economic viability is the standard for determining a taking while advancement of legitimate interests is the standard for determining the constitutionality of a zoning ordinance.Goldberg, 81 Ohio St.3d at 212-13. In either case, since MDJ raised both challenges and we have already concluded that the R-2 classification substantially advances legitimate governmental interests, we need only consider whether the zoning deprives MDJ of all economic uses of the property.